Steven GOODCHILD, as Next Friend, Parent and/or Guardian of Amberley Goodchild, a Minor, and Chelsea Goodchild, a Minor, Appellants,

Rebecca Youngblood O'Connor, as Next Friend, Parent and/or Guardian of Ryan Neal Youngblood, a Minor, and Jacob James Youngblood, a Minor, Individually and on Behalf of the Estate of James Ray Youngblood, Deceased, Intervenors–Appellants,

v.

BOMBARDIER–ROTAX GMBH, MO-TORENFABRICK, an Austrian Corporation, Appellee.

No. 14–96–01145–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 6, 1998.

Edward J., Cooney, G. Wesley Urquhart, Daniel Jay Goldberg, Houston, David L., Cwik, Chicago, IL, for appellants.

Rick Lee Oldenettel, Robert McCabe, Houston, for appellees.

Before MURPHY, C.J., and HUDSON and SMITH,\* JJ.

## OPINION

MURPHY, Chief Justice.

Upon motion for rehearing, the motion is granted, the opinion of April 23, 1998 in the present case is withdrawn, and the following opinion is substituted in its place.

This is an appeal from the trial court's rendition of a final judgment based on Bombardier–Rotax's special appearance. Appellants and intervenors-appellants (hereinafter, collectively, "appellants") filed suit against several defendants, including Bombardier–Rotax, alleging numerous causes of action arising out of an aircraft crash in which James Ray Youngblood and Cheryl Lee Youngblood died. Bombardier–Rotax, an Austrian business entity, filed a special appearance objecting to the trial court's personal jurisdiction. A few months after the

trial court dismissed the causes of action against Bombardier–Rotax for want of personal jurisdiction, appellants twice attempted to take a non-suit without prejudice in the case. Bombardier–Rotax's former co-defendant, Rans, Inc. ("Rans"), responded to the non-suit attempts by filing motions to strike the non-suits and reinstate the case, as well as motions for sanctions against the appellants. The trial court granted the motions to strike, twice "reinstating" the case, and also imposed the requested sanctions. Following the second reinstatement of the case, Bombardier–Rotax filed a motion to sever appellants' claims against it from those against the other defendants and requested the trial court enter a final judgment based upon its findings in the special appearance. The trial court granted the motion and entered a final judgment on April 11, 1996. Appellants assert the trial court erred by: granting Bombardier–Rotax's special appearance; entering a final judgment; not ruling on their request to compel answers to interrogatories and require production of documents; imposing sanctions against them; and not allowing their non-suits. We affirm the trial court's severance of the causes of action against Bombardier–Rotax and the final judgment entered for Bombardier–Rotax based on its special appearance. We decline to address the matters raised by appellants relating to the non-suits and requests for sanctions because we are without jurisdiction to consider them.

## I. Background

On June 29, 1992, James Ray Youngblood and Cheryl Lee Youngblood died in a crash involving James's Rans S6ES Coyote II aircraft. James had purchased the aircraft as a kit for assembly from Rans. The appellants, as representatives of children of the Youngbloods,[1] sued Rans and several other entities they alleged had manufactured parts for the Rans aircraft, for (1) negligence; (2) violations of the Texas Deceptive Trade Practices

---

\* Justice Jackson B. Smith, Jr., retired, sitting by assignment.

1. The original suit was filed by Steven Goodchild, as next friend, parent and/or guardian of Amberley Goodchild, a minor, and Chelsea Go-

odchild, a minor. Rebecca Youngblood intervened as a plaintiff as next friend, parent and/or guardian of Ryan Neal Youngblood, a minor, and Jacob James Youngblood, a minor, and on behalf of the estate of James Ray Youngblood.

Act; and (3) breach of express and implied warranties. Bombardier–Rotax was sued as the purported manufacturer of the engine power plant for the aircraft.

Bombardier–Rotax entered a special appearance, under Rule 120(a) of the Texas Rules of Civil Procedure, objecting to the jurisdiction of the trial court and also filed a motion to quash the service of citation upon it. *See* TEX. R. CIV. P. 120(a). The trial court held a hearing on Bombardier–Rotax's special appearance, and it dismissed the intervenors-appellants' and appellants' claims against Bombardier–Rotax on November 1, 1995 and December 6, 1995, respectively. Prior to the trial court's ruling on Bombardier–Rotax's special appearance, the appellants filed with the trial court a "motion to compel answers to interrogatories and response to document requests pertaining to jurisdictional issues" from some of Bombardier–Rotax's co-defendants. The trial court never ruled on the motion.

The appellants filed a notice of non-suit without prejudice on February 19, 1996. Rans responded to the notice of non-suit by filing a motion for sanctions in the trial court because it felt the non-suit was an attempt to thwart unfavorable discovery orders issued by the court. Additionally, Rans filed a motion to strike appellants' non-suit and reinstate the case. On March 19, 1996, the trial court sustained Rans's motion to strike and to reinstate the case and imposed the requested sanctions. That same day, the appellants filed a second notice of non-suit without prejudice. On April 1, 1996, the trial court sustained Rans's second motion to strike appellants' non-suit and reinstate the case and again imposed sanctions.

After the trial court had reinstated the appellants' case for the second time, Bombardier–Rotax filed a motion asking the trial court to sever appellants' claims against it from those against its co-defendants and to enter a final judgment based on the trial court's finding it was without jurisdiction. The trial court granted the request for a severance and entered a final judgment against appellants in their claims against Bombardier–Rotax. It is from this judgment that the appellants appeal.

Appellants raise six points of error before this court: (1) the trial court erred in refusing to sign an order of dismissal on their first non-suit without prejudice and abused its discretion in granting Rans's motion to strike the non-suit and reinstate the case;[2] (2) the trial court erred in refusing to sign an order of dismissal on their second non-suit without prejudice and abused its discretion in granting Rans's second motion to strike their second non-suit without prejudice and reinstate the case; (3) the trial court erred in imposing sanctions against them on March 19 and April 1, 1996; (4) the trial court erred in granting Bombardier–Rotax's motion for severance and entering a final judgment as to Bombardier–Rotax; (5) the trial court erred in failing to rule on their motion to compel defendants to answer interrogatories and respond to requests for production of documents pertaining to jurisdictional discovery; and (6) the trial court erred in granting Bombardier–Rotax's special appearance objecting to *in personam* jurisdiction on November 1, 1995.

## II. Discussion

### A. Scope of review

▆ As a preliminary matter, we feel it is necessary to determine the scope of our review in the present case. We note that a Texas appellate court has jurisdiction to hear an appeal only if it is from a final judgment or it is specifically permitted under the statutory list of appealable interlocutory orders. *See Gathe v. Cigna Healthplan of Texas, Inc.,* 879 S.W.2d 360, 362 (Tex.App.—Hous-

---

2. The appellants originally filed their brief with this court raising only, as to their first and second points of error, the trial court's abuse of discretion in granting Rans's motions to strike and reinstate the case. Pursuant to the Texas Supreme Court's decision in *In re Bennett,* which held that "the signing of an order dismissing a case, *not the filing of a notice of non-suit,* is the starting point for determining when a trial court's plenary power expires," the appellants modified their first and second points of error to include the claim the trial court erred in not entering an order of dismissal after they had filed a notice of non-suit. *See* 960 S.W.2d 35, 38 (Tex.1997)(orig.proceeding), *petition for cert. filed,* 66 U.S.L.W. 3800 (U.S. June 11, 1998) (No. 97–2011).

ton [14th Dist.] 1994, writ denied). At the time the trial court granted Bombardier–Rotax's special appearance, such an order was not an appealable interlocutory order. *See* Act of June 18, 1993, 73rd Leg., R.S., ch. 855, § 1, 1993 Tex. Gen. Laws 3365, 3365–66 (amended 1997) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (Vernon Supp.1998)); *Cessna Aircraft Co. v. Hotton Aviation Co.,* 620 S.W.2d 231, 232–33 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.). As a means of bringing forth a special appearance ruling for immediate appellate review, however, Texas trial courts often employ the tactic, when defendants subject to a special appearance are part of an ongoing suit, of severing the causes of action against that defendant and entering a final judgment based on the grant of the special appearance.[3] *See, e.g., Conner v. ContiCarriers and Terminals,* 944 S.W.2d 405, 409 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Reyes v. Marine Drilling Cos., Inc.,* 944 S.W.2d 401, 402 (Tex.App.—Houston [14th Dist.] 1997, no writ); *see also Cessna Aircraft Co. v. Hotton Aviation Co.,* 620 S.W.2d at 232–33 (dismissing appeal for want of jurisdiction because the claims against appellee had not been severed from the remainder of the suit). Although reviewing appellate courts have never explicitly sanctioned a post-dismissal severance of a special appearance as an appropriate action by the trial court, they have at least implicitly accepted the procedure as sufficient to confer jurisdiction on them to hear the appeal. *See Conner v. ContiCarriers and Terminals,* 944 S.W.2d at 409. We, likewise, will treat the severance and entry of final judgment as acts conferring jurisdiction upon this court.

In the present case, the difficulty lies, at least for the purpose of determining the scope of review, in the fact that the trial court entered rulings on the appellants' attempts at non-suits and Rans's request for sanctions during the period between when Bombardier–Rotax's special appearance was granted and when the trial court severed those causes of action against Bombardier–Rotax and entered a final judgment as to those causes. We believe our review is limited, however, to appellants' points of error dealing only with the trial court's severance and grant of Bombardier–Rotax's special appearance. We include appellants fifth point of error, whether the trial court erred in failing to rule on their motion to compel defendants to answer interrogatories and respond to requests for production of documents pertaining to jurisdictional discovery, within the review because it is relevant to discovery issues on the special appearance.

■ We decline to review appellants' points of error one through three, which discuss the appropriateness of the trial court's refusal to enter non-suits per the appellants' requests and the corresponding sanctions ordered for the appellants' attempt to take the non-suits, because they are not properly before us on appeal. The attempted non-suits occurred approximately two months after the trial court had dismissed appellants' causes of action against Bombardier–Rotax due to its grant of the defendant's special appearance. Therefore, Bombardier–Rotax, the only appellee before us, played no active role in the non-suit and sanctions hearings and procedures. It was in recognition of this fact that the trial court did not order the inclusion of any of the records pertaining to the non-suits and sanctions in the file of the newly severed case when it entered its final judgment on April 11, 1996.

■ Furthermore, we note the inherent danger we would confront by expanding our review to consider all of appellants' points of error. The trial court's refusal to enter the non-suits and orders for sanctions are all unappealable, interlocutory orders. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014. Should we make a pronouncement on the validity of those intervening decisions, we would be affecting the rights of the parties remaining in the lawsuit. The trial court's intervening decisions on the non-suits and sanctions are of particular significance to Bombardier–Rotax's co-defendants, who are

---

3. Now that a special appearance has been made an appealable interlocutory order, this procedure is no longer necessary. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014.

not before us to raise the salient arguments in support of the trial court's actions.[4]

Therefore, we dismiss for want of jurisdiction appellants' points of error one through three, and we proceed to address on the merits appellants' points of error four through six.

### B. Appellants' remaining points of error

■ In their fourth point of error, appellants contend the trial court erred in granting Bombardier–Rotax's motion for severance and entry of final judgment. Appellants originally asserted the reason for the trial court's error was the fact the filing of the non-suits ended the trial court's jurisdiction to enter the severance and final judgment. As the appellants' themselves acknowledge, however, in light of the Supreme Court's holding in *In re Bennett*, the trial court's plenary power expires not upon the filing of a non-suit, but upon the trial court's signing of an order dismissing a case. *See In re Bennett*, 960 S.W.2d 35, 38 (Tex.1997)(orig.proceeding), *petition for cert. filed*, 66 U.S.L.W. 3800 (U.S. June 11, 1998) (No. 97–2011).

■ Appellants assert, in the alternative, that the trial court abused its discretion in not granting the non-suits and, therefore, should not have retained jurisdiction to enter the severance and final judgment. As we noted in our discussion of the scope of our review, above, we are without jurisdiction to address the trial court's actions in not entering orders of dismissal pursuant to the appel-

lants' filing of non-suits because the refusal remains non-appealable and interlocutory until a final judgment is rendered in the suit.[5] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014. Thus, appellants fail to offer sufficient argument to show error in the trial court's action of entering the severance and final judgment.[6]

We overrule appellants' fourth point of error.

■ In their fifth point of error, appellants assert the trial court committed error in failing to rule on their motion to compel Bombardier–Rotax's co-defendants to answer interrogatories and respond to their request for production of documents pertaining to the jurisdictional discovery. Appellants sought discovery from co-defendants who allegedly were distributors of Bombardier–Rotax manufactured goods.

■ The appellants failed to preserve error on their requests, however. Under Rule 52(a) of the Rules of Appellate Procedure,[7] it is "necessary for the complaining party to obtain a ruling upon the party's request, objection or motion." TEX. R. APP. P. 52(a), 707–08 S.W.2d (Texas Cases) lxiv (1986). The rule further provides "[i]f the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint." *Id.*

Bombardier–Rotax entered its special appearance on July 29, 1994. Appellants filed their motion with the trial court at some time prior to the July 11, 1995 hearing on Bombardier–Rotax's special appearance. Despite

---

4. We note that Bombardier–Rotax and its co-defendants did not share interests in the intervening trial court decisions because Bombardier–Rotax simply wanted to achieve finality of the trial court's ruling on its special appearance, while its co-defendants wanted to maintain the case and the trial court's rulings on discovery and sanctions.

5. We realize our position puts the appellants in a difficult situation. For all intents and purposes, they are limited in posing jurisdictional arguments against the trial court's entering of the severance and final judgment. Nevertheless, we believe the proper avenue for appellants' complaint is a mandamus proceeding, much like that in *In re Bennett*. *See* 960 S.W.2d at 36–38. Through mandamus, the appellants would be

able to present their issues to the court with the proper parties present.

6. Appellants do not argue, but we acknowledge the fact, that if the trial court erred in granting Bombardier–Rotax's special appearance then the entry of final judgment was correlatively erroneous. Since this basis for error relies solely upon the validity of the trial court's actions in ruling on the special appearance, however, we shall address it only in the context of appellants' point of error dealing with the trial court's determination on that matter.

7. Effective September 1, 1997, the substance of Rule 52(a) became part of Rule 33.1 of the Rules of Appellate Procedure. *See* TEX. R. APP. P. 33.1.

the fact the special appearance hearing had been rescheduled, pursuant to a Rule 11 agreement entered into by both parties, from a date approximately ten months prior, the record does not show that the appellants appeared before the trial court at any time before the July 11, 1995 hearing to obtain a ruling on their motion. The statement of facts from the hearing indicates appellants raised their complaints at the hearing, but they did not obtain a ruling from the trial court on the motion and they did not object to the trial court's failure to make such a ruling. The trial court did not enter its rulings on the special appearance until November and December of the same year. Nevertheless, and even with this extension of time, the record does not show that appellants ever obtained a ruling on their motion or objected to the trial court's failure to rule. Thus, appellants failed to preserve error on this point of error. *See Id.*

We overrule appellants' fifth point of error.

■ In their sixth point of error, appellants assert the trial court erred in granting Bombardier–Rotax's special appearance objecting to the court's personal jurisdiction over it. Appellants argue Bombardier–Rotax purposefully availed itself of the protection of the laws of the United States by entering its products into the stream of commerce and by maintaining service centers and warranty provisions for U.S. customers. Bombardier–Rotax does not challenge the assertion that one of their products was used in Texas, but it alleges the use was not sufficient to constitute a purposeful interjection into the state so as to bring it under the forum's jurisdiction.

■ We conduct a *de novo* review of a trial court's determination on personal jurisdiction. *See Conner v. ContiCarriers and Terminals*, 944 S.W.2d at 411–12. Nevertheless, the existence of personal jurisdiction is often based on a trial court's findings of underlying facts. *See id.* at 411. Therefore, when the facts underlying the trial court's determination are in dispute, we must conduct a sufficiency of the evidence review of all the evidence in the record "to determine the appropriateness of the trial court's resolution of those facts." *Id.*

■ There are two components to the test for personal jurisdiction in a Texas court: (1) whether jurisdiction is authorized under the Texas long-arm statute and (2) whether the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990). The general and broad language of the Texas long-arm statute, however, causes the court's analysis of these components to be combined under the singular question of whether the exercise of personal jurisdiction is consistent with federal constitutional standards. *See Guardian Royal Exch. Assurance. Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991); *Schlobohm*, 784 S.W.2d at 357; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997) (setting out the "acts constituting business" in Texas).

In its decision in *Schlobohm v. Schapiro*, the Texas Supreme Court explained the federal due process standard for exercising personal jurisdiction and how Texas courts apply such standard:

Under the federal constitutional test of due process, a plaintiff must overcome two hurdles to justify the exercise of jurisdiction over a nonresident defendant. The plaintiff must initially show that the defendant has established minimum contacts with the forum state. He must then show that the assertion of jurisdiction comports with fair play and substantial justice.

The United States Supreme Court has extensively developed the first prong of the test, the minimum contacts analysis. We now know that an essential goal of the test is to protect the defendant. This goal requires that we focus upon his intentional activities and expectations in deciding whether it is proper to call him before the courts of the forum. He must do something purposeful to avail himself of the privilege of conducting activities in the forum, thus invoking the benefit and protection of its laws. Those activities, whether they consist of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendant should rea-

sonably anticipate being called into court there.

The Court has refined the minimum contacts analysis by identifying recurring fact patterns and outlining guidelines for application of the due process test to these patterns. Where the activities of a defendant in a forum are isolated or disjointed, for example, jurisdiction is proper if the cause of action arises from a particular activity. In these cases, jurisdiction is said to be specific. The minimum contacts analysis is somewhat narrow, focusing on the relationship among defendant, forum, and litigation. On the other hand, where the defendant's activities in the forum are continuing and systematic, jurisdiction may be proper without a relationship between defendant's particular act and the cause of action. In these cases, jurisdiction is often said to be general. The minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state.

Under the second prong of the test of due process, plaintiffs must show that the exercise of *in personam* jurisdiction comports with fair play and substantial justice. 784 S.W.2d at 357. Appellants do not contend that jurisdiction in the present case is predicated on general jurisdiction, or, in other words, on any continuing and systematic business activities by Bombardier–Rotax in Texas. *See id.* at 358–59; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–18, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (the conducting of negotiations, sending of personnel to the forum for training, and purchasing of products, even if occurring at regular intervals, was insufficient to satisfy due process for exercising general jurisdiction over a foreign defendant). Therefore, we must focus on the basis for exercising specific jurisdiction over Bombardier–Rotax.

In *Schlobohm,* the court further set out Texas's three-part formula for ensuring compliance with the federal due process standard:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction; and

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

784 S.W.2d at 358; *see also id.* (amending the second part of the formula to account for a general basis for jurisdiction). At the hearing on the special appearance, Bombardier–Rotax did not contest the fact that it had manufactured the engine used in the Youngbloods' aircraft. Instead, Bombardier–Rotax asserted the presence of its engine in the Youngblood's aircraft was not the result of any purposeful act or consummation of a transaction sufficient to demonstrate "minimum contacts" in Texas by Bombardier–Rotax.

■ Appellants attempted to employ the stream of commerce theory for establishing a specific basis for jurisdiction. Their assertion arises out of the United States Supreme Court's statement in *World–Wide Volkswagen Corp. v. Woodson* that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. 286, 297–98, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The ground for exercising jurisdiction based upon the stream of commerce theory is foreseeability, but not foreseeability of the "mere likelihood that a product will find its way into the forum State." *Id.* at 297. Rather, the proper foreseeability inquiry is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* Thus, in *World–Wide Volkswagen,* although

the court noted the stream of commerce theory, it held that an auto dealership in New York had not purposefully availed itself of the privilege of conducting business in Oklahoma by the mere happenstance "that a single Audi automobile ... suffer[ed] an accident while passing through" the state. *Id.* at 295.

In the plurality opinion of *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County,*[8] the Supreme Court noted the type of evidence useful in demonstrating the foreseeability necessary for showing minimum contacts:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

■ In the present case, appellants attempted to introduce testimony and numerous exhibits to show Bombardier–Rotax's "minimum contacts" with Texas. Much of this evidence was objected to by Bombardier–Rotax's counsel, and the trial court subsequently sustained most of the objections.[9]

Because the appellants do not challenge the trial court's rulings on the admissibility of the evidence presented at the hearing, they have waived any right to complain on appeal of the rulings and we must consider only that evidence which is properly in the record before us. *See Lout v. Whitehead,* 415 S.W.2d 403, 407 (Tex.1967).

Of the evidence properly contained in the record, appellants simply fail to sustain their burden of demonstrating the minimum contacts necessary for the federal constitutional guarantees of due process. None of the exhibits refer to sale or repair activity directed at Texas. Testimony at the hearing indicated the presence of other alleged Bombardier–Rotax products in Texas, but appellants' counsel failed to establish how those products reached Texas due to any purposefully directed activities of Bombardier–Rotax or any other link with the business entity. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297; *Moore v. Elektro–Mobil Technik GmbH,* 874 S.W.2d at 329–30. Of particular note is the appellants' failure to show any nexus between the Youngbloods' acquisition of a plane with a Bombardier–Rotax engine power plant and any act or consummation of a transaction by Bombardier–Rotax in Texas. *See Schlobohm v. Schapiro,* 784 S.W.2d at 358; *Hopper v. Mayeaux,* 545 F.Supp. 1174, 1176–77 (S.D.Tex.1982). In fact, the most compelling statements of fact to support the trial court's exercise of jurisdiction were made by appellants' counsel in trying to explain his clients' position. His statements, however, are not "evidence" to be considered when we review the record.

---

8. While we note that the opinion did not gain support from a majority of the court, we quote from the plurality's opinion only for the instructive guidance it gives a plaintiff. *See Moore v. Elektro–Mobil Technik GmbH,* 874 S.W.2d 324, 329 (Tex.App.—El Paso 1994, writ denied); *but see Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County,* 480 U.S. at 116–21 (opinion of Brennan, J., joined by three other justices, concurring in part and concurring in the judgment, but expressly disavowing the plurality's interpretation and application of the stream of commerce theory).

9. Out of the twenty–eight exhibits proffered by appellants, only four were admitted. None of the four were insightful as to Bombardier–Rotax's contacts with Texas. Two exhibits were collections of documents, such as bills of sale and shipping invoices, but none of the documents show how Bombardier–Rotax has availed itself of the protections and privileges of Texas because they do not directly mention any business contacts with Texas. One exhibit was a deposition of a representative of one of Bombardier–Rotax's co-defendants, but appellants do not direct us to any reference in the document that supports the exercise of jurisdiction. The one remaining admitted exhibit was a patent given to Bombardier–Rotax for an internal combustion engine, but, again, appellants failed to show how this detailed a relationship with Texas.

We overrule appellants' sixth point of error.

## III. Conclusion

We affirm the trial court's judgment with regard to its refusal to rule on discovery matters related to Bombardier–Rotax's special appearance, the grant of that special appearance, and the subsequent severance and entry of final judgment based on the trial court's ruling on the special appearance. We dismiss for want of jurisdiction appellants' claims that the trial court erred by failing to enter non-suits upon appellants' requests, and the contention the trial court's corresponding orders for sanctions were erroneous.