NUMBER 13-00-434-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


IN RE: JOHN PROFANCHIK AND 

CONVERSANT TECHNOLOGIES, INC.
, Relators.

___________________________________________________________________


On Petition for Writ of Mandamus.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Rodriguez

Opinion by Chief Justice Seerden



 In this original proceeding, relators John Profanchik and
Conversant Technologies, Inc. complain of the district court's refusal to
compel arbitration under the Federal Arbitration Act. 

Standard of Review


 Mandamus relief is available if the trial court violates a duty
imposed by law or clearly abuses its discretion, either in resolving
factual issues or in determining legal issues, when there is no adequate
remedy at law. See Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.
1992). Mandamus is appropriate when a state court erroneously denies
a motion to compel arbitration under the federal scheme. See In re
Valero Energy Corp., 968 S.W.2d 916, 916 (Tex. 1998); In re Bruce
Terminix Co., 988 S.W.2d 702, 703-04 (Tex. 1998). 

Background


 John Profanchik sent Fred Regalado, the real party in interest, a
proposed letter agreement on December 30, 1997, soliciting Regalado's
participation as an investment owner in Conversant Technologies, Inc.
("CTI"). Although Regalado did not accept this initial offer, Regalado
subsequently accepted a second letter agreement, sent on January 26,
1997, and executed with an addendum on February 5, 1998. 

 Under this agreement, Regalado agreed to invest $150,000 in CTI
for fifteen percent ownership in CTI and all of CTI's current and future
assets and profits. The letter agreement also contained a provision
whereby Regalado agreed that in the event any legal action were to be
instituted against him that could result in a criminal conviction, CTI had
the option to purchase Regalado's fifteen per cent ownership back at
fair market value. CTI further had the right of first refusal in the event
Regalado decided to sell his ownership. The agreement further
contained other provisions regarding the transfer of the purchase price,
the use of CTI ownership as security, meetings, and methods for
making major financial decisions. 

 The addendum to the agreement contains specifications regarding
when Regalado was to remit his $150,000 initial investment and
provisions for repayment of Regalado's investment. Under the
addendum, CTI agreed to "work very hard" to repay Regalado $120,000
by the end of 1998.(1) The addendum further addressed salaries for CTI
employees. 

 The parties thereafter executed a "Stock Purchase/Sale
Agreement" in late 1998 and early 1999. The Stock Purchase/Sale
Agreement governed the transfer of shares, provided the right of first
refusal, and set various terms of payment. This agreement contains an
arbitration provision:

 Subject to the foregoing provisions for appropriate injunctive relief
in connection with the sale and purchase of Shares pursuant
hereto which will lie by agreement of the parties with any court of
competent jurisdiction in Dallas County, Texas, the parties and
signatories hereto agree that any dispute arising between them
with regard to this Agreement shall be subject upon the
application of any party to arbitration in Dallas, Texas in
accordance with the rules and procedure of the American
Arbitration Association. Any such arbitration proceeding shall be
final and binding upon the parties with regard to all matters
covered thereby, and upon application by any party the award of
the arbitrators shall be confirmed and a judgment rendered
thereon in an appropriate court of law.

Profanchik thereafter executed his option to purchase Regalado's
interest in CTI, and Regalado consequently sued Profanchik and
Conversant Technologies alleging causes of action for oppression of a
minority shareholder, fraud, constructive trust, and slander. 

 Profanchik and CTI filed a motion in the district court to compel
arbitration and abate the proceedings. After a hearing, the district court
denied the motion to compel arbitration. Relators Profanchik and CTI
now petition this Court for mandamus relief from this decision, arguing
that arbitration should be compelled under the Federal Arbitration Act.

Applicability of the Federal Arbitration Act 


 The Federal Arbitration Act "applies to all suits in state or federal
court when the dispute concerns 'a contract evidencing a transaction
involving commerce.'" Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
269-70 (Tex. 1992). A written arbitration provision in a contract
evidencing a transaction involving commerce extends to any contract
affecting commerce, as far as the Commerce Clause of the United States
Constitution will reach. Allied-Bruce Terminex Co. v. Dobson, 513 U.S.
265, 268 (1995); In re L & L Kempwood Assoc., L.P., 9 S.W.3d 125,
127 (Tex. 1999). The transaction must in fact involve interstate
commerce. Allied-Bruce Terminex Co., 513 U.S. at 281. 

 The issue is not whether the parties' dispute affects interstate
commerce, but whether their dispute concerns a transaction that affects
interstate commerce. See Jack B. Anglin, 842 S.W.2d at 272; In re
Education Management Corp., 14 S.W.3d 418, 423 (Tex.App.--Houston
[14th Dist.] 2000, orig. proceeding). The FAA does not require a
substantial effect on interstate commerce; rather, it requires only that
commerce be involved or affected. Kempwood, 9 S.W.3d at 127. 

 There is a presumption favoring agreements to arbitrate under the
federal act. Cantella & Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex.
1996). A party seeking to compel arbitration must present sufficient
evidence to establish its right to arbitrate under the act. Id.; see EZ
Pawn Corp. v. Mancias, 934 S.W.2d 87, 91 (Tex. 1996) (burden is on
party seeking to compel arbitration to establish its right to arbitrate
under FAA). If it does, and the opposing party does not defeat that
right, the trial court is obliged to compel arbitration. Id. 

 When, as here, there is no express agreement to arbitrate under
the federal act, the question of whether the parties' transaction affects
interstate commerce is one of fact. Stewart Title Guaranty Co. v. Mack,
945 S.W.2d 330, 332 (Tex.App.--Houston [1st Dist.] 1997, writ dism'd
w.o.j.). A party who alleges interstate commerce may show it in a
variety of ways: location of headquarters in another state;
transportation of materials across state lines; manufacture of parts in
a different state; billings prepared out of state; interstate mail and phone
calls in support of a contract. See Anglin, 842 S.W.2d at 270; Stewart
Title Guaranty Co., 945 S.W.2d at 332.

 In support of its allegation that the present dispute concerns a
transaction involving interstate commerce, Profanchik testified that CTI
installs telephones in correctional facilities in Texas, Oklahoma, and
New Mexico. The company thus does business in various states, and
Profanchik testified, over objection, that CTI is involved in interstate
commerce. Regalado argues, in response, that Profanchik and Regalado
are both Texas residents and CTI is a Texas corporation with its main
offices in Texas. Regalado thus characterizes the instant dispute as one
between Texas residents over ownership in a Texas corporation, and
contends that the ownership of the corporation does not affect
interstate commerce.

 We disagree. The United States Supreme Court and the Texas
Supreme Court have clearly established that the Federal Arbitration Act
applies to any contract affecting commerce, as far as the Commerce
Clause of the United States Constitution will reach. Allied-Bruce
Terminex Co., 513 U.S. at 268; In re L & L Kempwood Assoc., 9 S.W.3d
at 127. The contract at issue affects ownership of a corporation that is
involved in interstate commerce. The undisputed facts establish that
the corporation carries out commercial ventures in several states. 
Moreover, the nature of the business itself, telecommunications, clearly
involves interstate commerce. It would be remarkable to say that the
purchase of a single telephone could evidence a transaction in interstate
commerce, yet an agreement relating to ownership of an entire
interstate telecommunications business does not. Cf. Prima Paint Corp.
v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402 n.7 (1967); BWI
Companies, Inc. v. Beck, 910 S.W.2d 620, 623 (Tex.App.--Austin 1995,
orig. proceeding [leave denied])(FAA applies in employer-employee
relationship where employer's business operations involve interstate
commerce). We conclude that the foregoing suffices to establish the
applicability of the federal arbitration act.



Scope of the Arbitration Agreement


 When a party asserts a right to arbitration under the federal act,
the question of whether a dispute is subject to arbitration is determined
under federal law. See Prudential Securities, Inc. v. Marshall, 909
S.W.2d 896, 899 (Tex. 1995). Under federal law, whether a claim falls 
within the scope of an arbitration agreement depends on the factual
allegations of the complaint, rather than the legal cause of action
asserted. See id.; see also Ikon Office Solutions, Inc. v. Eifert, 2 S.W.3d
688, 697 (Tex.App.--Houston [14th Dist.] 1999, orig. proceeding);
Prudential-Bache Securities, Inc. v. Garza, 848 S.W.2d 803, 807
(Tex.App.--Corpus Christi 1993, orig. proceeding). 

 Generally, if the facts alleged "touch matters," have a "significant
relationship" to, are "inextricably enmeshed" with, or are "factually
intertwined" with the contract that is subject to the arbitration
agreement, the claim will be arbitrable. See Pennzoil Co. v. Arnold Oil
Co., No. 04-00-00062-CV, 2000 Tex. App. LEXIS 5622, *7 (San Antonio,
August 23, 2000, no pet. h.) (citing Hou-Scape, Inc. v. Lloyd, 945
S.W.2d 202, 205-06 (Tex.App.--Houston [1st Dist.] 1997, orig.
proceeding) and cases cited therein). However, if the facts alleged in
support of the claim stand alone, are completely independent of the
contract, and the claim could be maintained without reference to the
contract, the claim is not subject to arbitration. See Fridl v. Cook, 908
S.W.2d 507, 511 (Tex.App.--El Paso 1995, writ dism'd w.o.j.). 

 Any doubts as to whether a claim falls within the scope of the
agreement must be resolved in favor of arbitration. See Prudential
Securities, Inc., 909 S.W.2d at 899. The federal policy in favor of
enforcing arbitration agreements is so compelling that a court should
not deny arbitration "unless it can be said with positive assurance that
an arbitration clause is not susceptible of an interpretation which would
cover the dispute in issue." See id. In determining whether the claim
falls within an arbitration clause, a court focuses on the facts alleged, 
not on the causes of action asserted. Prudential Sec., Inc., 909 S.W.2d
at 899; Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205 (Tex.App. --Houston [1st Dist.] 1997, orig. proceeding). 

 Regalado asserts that the arbitrability of the instant dispute should
be determined by reference to his second amended petition, filed on
July 31, 2000, two months after entry of the order denying arbitration
on May 30, 2000. In his second amended petition, Regalado stated
that:

 Plaintiff Fred Regalado is now filing suit against . . . Defendants
John Profanchik and Conversant Technologies based on his
original investment agreement. To clarify the record, none of the
Plaintiff's claims are based on the stock purchase/sale agreement
or the buyout of Plaintiff's shares of stock. Any claims relating to
said stock purchase/sale agreement or the buyout of Plaintiff's
shares are separate and apart from this lawsuit and Plaintiff is not
asserting any claims nor seeking any damages in regards to the
stock purchase/sale agreement of the buyout of his shares of
stock. 


Profanchik asserts that the arbitrability of the instant dispute should
instead be determined on the basis of the pleadings on file at the time
of submission and determination of the motion to compel. We agree
with Profanchik, and will consider the record as it appeared before the
trial court at the time of its ruling on the motion to compel arbitration. 
See, e.g., Goodchild v. Bombardier-Rotax GMBH, 979 S.W.2d 1, 9
(Tex.App.--Houston [14th Dist.] 1998, pet. denied)(court considers
record at time of ruling on special appearance); H.S.M. Acquisitions,
Inc. v. West, 917 S.W.2d 872, 878 (Tex.App.--Corpus Christi 1996, writ
denied)(court considers record only as existed when summary
judgment entered); Thompson v. Haberman, 739 S.W.2d 71, 72
(Tex.App.--San Antonio 1987, orig. proceeding)(discovery could not
support protective order when not on file at time of ruling). Moreover,
other than the disclaimer quoted above, we note that the original
petition and the second amended petition do not greatly differ either in
their recitation of facts or causes of action asserted.(2)

 The Stock Purchase/Sale Agreement provides for arbitration of
"any dispute arising between [the parties] with regard to this
Agreement." The gravamen of Regalado's complaint is that Profanchik
wrongfully deprived him of his fifteen percent interest in CTI. 
Profanchik acquired Regalado's interest in CTI through exercise of the
Stock Purchase/Sale Agreement. We conclude that Regalado's claims
fall within the scope of the arbitration agreement contained in the Stock
Purchase/Sale Agreement.

 Regalado contends that Profanchik "schemed to squeeze out"
Regalado as a minority shareholder; attempted to force Regalado to sell
him his shares; attempted to "terminate" Regalado's relationship with
the company; and attempted to deprive Regalado of his stock
ownership in CTI. Regalado also argues that Profanchik's actions
served to frustrate his legitimate expectations and were a departure
from the standards of fair dealing owed to shareholders of a
corporation. 

 Regalado alleges that Profanchik made several false
representations to him regarding repayment of his initial investment and
his ownership in CTI. Specifically, Regalado argues that Profanchik
falsely represented that CTI would repay him $120,000 of his $150,000
initial investment by the end of 1998, and that if CTI failed to acquire as
many new contracts as it anticipated in 1998, CTI would repay
Regalado a minimum of $75,000. Regalado also contends that
Profanchik told him that if he invested $150,000, Regalado would
receive fifteen percent ownership in CTI and all of CTI's current and
future assets and profits. This ownership would include all equipment,
phones, and accessories owned by CTI at the time and in the future. 

 Regalado argues that Profanchik obtained $150,000 and fifteen
percent ownership in CTI through false promises and representations,
and that Profanchik was unjustly enriched by being allowed to retain
Regalado's property. 

 We conclude that the facts alleged have a significant relationship
with the Stock Purchase/Sale Agreement, and are factually intertwined
with that agreement. Regalado's claims are thus arbitrable under the
Federal Arbitration Act. See Pennzoil Co., 2000 Tex. App. LEXIS 5277,
*7. 

 Regalado also asserts a cause of action for slander and
defamation, alleging that Profanchik told third parties that Regalado
was involved in selling illegal drugs. A defamation claim is generally
arbitrable if the alleged statements arose directly out of a dispute about
the contractual relation, if the statements were integrally linked to the
parties' contractual relation, or if the statements arose from the
contract's performance. Hou-Scape, Inc., 945 S.W.2d at 206 (citing
Popper v. Monroe, 673 F.Supp. 1228, 1230 (S.D.N.Y. 1987)). At the
hearing on the motion to compel arbitration, Profanchik testified that 
defendants opted to purchase Regalado's shares in part because they
learned that Regalado socialized with individuals out on bail for drug
convictions, because Regalado had been searched by the sheriff's
department, and because Regalado's plane had been searched by the
Drug Enforcement Administration. The alleged statements by
Profanchik were integrally linked to the stock purchase/sale agreement,
and were thus arbitrable. 

Conclusion


 Mandamus will issue only to correct a clear abuse of discretion
when the abuse cannot be remedied by appeal. Walker, 827 S.W.2d at
840. In this case, the trial court abused its discretion because it
misapplied the Federal Arbitration Act to the facts of this case. See
Jack B. Anglin, 842 S.W.2d at 271. A party who is erroneously denied
the right to arbitration has no adequate remedy at law because the
fundamental purpose of arbitration--to provide a rapid, less expensive
alternative to traditional litigation--would be defeated. Id. 

 Because the claims at issue in this lawsuit are within the scope of
the agreement to arbitrate, we conditionally grant the petition for writ
of mandamus and direct the trial court to order that all claims proceed
to arbitration. The writ will issue only in the event that respondent fails
to comply.



 

 ROBERT J. SEERDEN, Chief Justice


Publish
.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 6th day of October, 2000.

 

1. The addendum contains additional language relating to CTI's
obligation to repay Regalado; however, this language is partially
obscured on all copies of the addendum in the record. 
2. In his original petition, Regalado asserted causes of action for
oppression of a minority shareholder, fraud, constructive trust, and
slander. In his second amended petition, Regalado asserts causes of
action for oppression of a minority shareholder, fraud, slander and
breach of contract.