Affirmed and Memorandum Opinion filed December 11, 2008








 

Affirmed
and Memorandum Opinion filed December 11, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00929-CR

____________

 

JUSTIN GLAZE EDMONDS, Appellant

 

v.

 

THE STATE OF TEXAS, Appellee

 

 



 

On Appeal from the
400th District Court

Fort Bend County,
Texas

Trial Court Cause
No. 39,353 Hc1

 



 

M E M O R
A N D U M   O P I N I O N

Appellant,
Justin Glaze Edmonds, was convicted of aggravated sexual assault of a child. 
Following an unsuccessful appeal, appellant applied for a writ of habeas
corpus, in which he argued that he was denied the effective assistance of
counsel because his trial attorney failed to request that the State elect which
of two alleged sexual acts upon which it would rely.    The trial court denied
habeas corpus relief, prompting this appeal.  We affirm.








                                                               BACKGROUND

Appellant
was indicted for aggravated sexual assault of a child younger than 14 years of
age.  See Tex. Penal Code Ann. ' 22.021 (Vernon Supp. 2008).  The
indictment recited that the offense occurred on or about March 1, 2002.  At
trial, the jury heard additional evidence that, soon after the charged
incident, appellant again committed the offense of aggravated sexual assault
against the child complainant.  Defense counsel did not request that the State
be required to elect between the two instances of the charged act.  This
failure to compel an election, appellant now contends, amounts to ineffective
assistance of counsel.

The jury
charge, like the indictment, stated that the alleged offense occurred on or
about March 1, 2002.  The jury found appellant guilty Aas charged in the instrument@ and assessed punishment at five
years= confinement, but recommended that
appellant be granted community supervision.  The trial judge heeded the jury=s recommendation and ordered
appellant to community supervision.  Appellant appealed his conviction,
contending that he received ineffective assistance of counsel because his
attorney failed to object when the State moved to amend the indictment on the
date trial began.  We affirmed appellant=s conviction.  See Edmonds v.
State, No. 14-05-00309-CR, 2006 WL 1147720 (Tex. App.CHouston [14th Dist.] March 30, 2006,
no pet.) (mem. op., not designated for publication).

Appellant
then applied for a writ of habeas corpus, arguing that he received ineffective
assistance of counsel because his attorney failed to compel an election.  The
trial court found that habeas relief was unavailable because appellant could
have raised this argument, with his other ineffective-assistance claim, on
appeal.  See Tex. Code Crim. Proc. Ann. art. 11.072, ' 3(a) (Vernon 2005).  In denying the
application for habeas corpus, the trial court also concluded:








Based on
the charge submitted to the jury, Defense counsel was not required to compel an
election between offenses when only one specific act was included in both the
jury charge and the indictment.  As such, the defendant is unable to show that
counsel=s performance was deficient or that the outcome of his
trial would have been different, but for counsel=s alleged error.

 

This appeal followed. 
Appellant contends the trial court erred in denying his application for habeas
corpus.  The State responds, in part, by arguing that appellant is procedurally
barred from pursuing habeas relief because of his failure to present his argument
on direct appeal.

                             PROCEDURAL
BAR TO HABEAS CORPUS RELIEF

Article
11.072 of the Code of Criminal Procedure sets forth the procedure for one who
seeks a writ of habeas corpus in a felony case following a judgment of
conviction that orders the applicant to community supervision.  Tex. Code Crim.
Proc. Ann. art. 11.072, ' 1.  If the applicant could have obtained the requested
relief through a direct appeal, he may not file an application for writ of
habeas corpus.  See id. art. 11.072, ' 3(a); Ex parte Pena, 71
S.W.3d 336, 338 (Tex. Crim. App. 2002).  The State contends that appellant
could have presented his current complaint in the earlier appeal, noting that
appellant did, in fact, raise an ineffective-assistance claim by direct
appeal.  See Edmonds, No. 14-05-00309-CR, 2006 WL 1147720, at *1.  We
disagree.

A claim
of ineffective assistance must be firmly supported in the record.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Where the record is
silent as to counsel=s motivations for tactical decisions, as was the case during
appellant=s direct appeal, the appellant often cannot overcome the Astrong presumption that counsel=s conduct was reasonable.@  See Mallett v. State, 65
S.W.3d 59, 63 (Tex. Crim. App. 2001).  In fact, we overruled appellant=s earlier ineffective-assistance
contention for that very reason: AWith respect to counsel=s performance, the record does not
reflect counsel=s reasons or strategy behind waiving the ten-day
continuance.  Therefore, appellant is unable to show his attorney=s performance was deficient.@  Edmonds, No. 14-05-00309-CR,
2006 WL 1147720, at *1 (footnote omitted).








Generally,
a record on direct appeal is inadequate to demonstrate ineffective assistance
of counsel.  See Freeman v. State, 125 S.W.3d 505, 511 (Tex. Crim. App.
2003).  For that reason, the Abetter course@ may require that an ineffective-assistance claim be pursued
in habeas proceedings.  See id.; Rylander v. State, 101 S.W.3d
107, 110 (Tex. Crim. App. 2003); State v. Webb, 244 S.W.3d 543, 546
(Tex. App.CHouston [1st Dist.] 2007, no pet.).

The
general rule applies in this case.  Appellant=s trial counsel first explained his
reasoning for failing to request an election in an affidavit filed on September
24, 2007.  See Stults v. State, 23 S.W.3d 198, 208B09 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d) (discussing importance of trial
counsel=s affidavit in resolving
ineffective-assistance claims).  Because the record on direct appeal did not
explain defense counsel=s decision not to request an election, appellant could not
have prevailed in a challenge based on his attorney=s performance in the direct appeal.  See
Webb, 244 S.W.3d at 546; Edmonds, No. 14-05-00309-CR, 2006 WL
1147720, at *1.  We hold that article 11.072 does not bar appellant from
pursuing habeas relief.

                                            FAILURE
TO REQUEST ELECTION

A.        Standard of Review








We apply
a two-pronged test to ineffective-assistance claims.  See Strickland v.
Washington, 466 U.S. 668, 687 (1984).  First, appellant must prove that
counsel=s performance was deficient, that is,
his attorney=s representation fell below an objective standard of reasonableness.  See
id. at 687B88.  Second, appellant must show that counsel=s deficient performance prejudiced
his defense.  See id. at 687.  This element requires the appellant to
demonstrate a reasonable probability that, but for the allegedly deficient
representation, the result of the proceeding would have been different.  See
id. at 694.  A Areasonable probability@ means a probability that is
sufficient to undermine confidence in the outcome.  Id.  The appellant
bears the burden of proving ineffective assistance by a preponderance of the
evidence.  Thompson, 9 S.W.3d at 813.

As we
review appellant=s complaint, we are reminded that his constitutional right to
counsel does not require errorless or perfect counsel.  See Ex parte Welborn,
785 S.W.2d 391, 393 (Tex. Crim. App. 1990); Saylor v. State, 660 S.W.2d
822, 824 (Tex. Crim. App. 1983).  We are to presume that trial counsel rendered
effective assistance.  See Mallett, 65 S.W.3d at 63.  Therefore,
appellant must overcome the strong presumption that, under the circumstances,
his attorney=s action might be considered sound trial strategy.  See Salinas v.
State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  Counsel=s performance will be deemed
sufficient if any strategic motive can be envisioned, and will be considered
deficient only if Athe conduct is so outrageous that no competent attorney would
have engaged in it.@  Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim.
App. 2005).  In deciding whether counsel was ineffective, we will consider the
totality of counsel=s representation, and will not judge counsel=s strategic decisions in hindsight.[1] 
Thompson, 9 S.W.3d at 813.








B.        Analysis

Appellant
suggests that the failure to request an election, where available,
automatically amounts to ineffective assistance of counsel, citing Yzaguirre
v. State, 957 S.W.2d 38 (Tex. Crim. App. 1997).  Appellant relies on the
following language, which is found in the concurring, not majority, opinion: AIn the instant case, appellant did
not request an election and limiting instruction as to non-elected or >extraneous= incidents, although he would have
been entitled to both.  Appellant=s counsel was probably ineffective in
failing to do so.@  Id. at 40 (Meyers, J., concurring).  Regarding this
statement, however, the Third Court of Appeals has rejected the idea that the
failure to request an election Aautomatically amount[s] to ineffective assistance.@  See Estevane v. State, No.
03-04-00257-CR, 2006 WL 504903, at *3 (Tex. App.CAustin March 2, 2006, pet. ref=d) (mem. op., not designated for
publication).  In fact, numerous Texas courts have observed that, in light of
the law on double jeopardy, the decision not to request an election may equate
to sound trial strategy.  See, e.g., Bernard v. State, No.
14-07-00473-CR, 2008 WL 4308467, at *4 (Tex. App.CHouston [14th Dist.] Aug. 28, 2008,
no pet.) (mem. op., not designated for publication); Brown v. State, 6
S.W.3d 571, 577 (Tex. App.CTyler 1999, pet. ref=d); see also Beheler v. State,
3 S.W.3d 182, 186 (Tex. App.CFort Worth 1999, pet. ref=d) (ABeheler=s trial attorney could have
reasonably decided against asking for an election and a limiting instruction to
avoid drawing the jury=s attention to the extraneous offenses.@).








However,
we need not decide the wisdom of the decision by appellant=s trial counsel not to request an
election because, based on the record presented, we cannot conclude that
counsel=s decision prejudiced appellant=s defense.  Therefore, appellant has
not carried his burden of demonstrating ineffective assistance of counsel.  See
Strickland, 466 U.S. at 687; Thompson, 9 S.W.3d at 813.

Generally,
when one act of intercourse is alleged in the indictment but the evidence at
trial shows more than one act of intercourse, the State must elect the act upon
which it will rely for conviction.  See O=Neal v. State, 746 S.W.2d 769, 771 (Tex. Crim.
App. 1988).  Once the State rests its case-in-chief, the trial court must grant
a timely request by the defendant to order the State to make an election;
failure to do so constitutes error.  See Phillips v. State, 193 S.W.3d
904, 909 (Tex. Crim. App. 2006).  Generally, an election serves two important
purposes.  First, an election gives the defendant notice of the particular
offense the State intends to rely upon, thereby affording the defendant the
opportunity to defend himself.  See O=Neal, 746 S.W.2d at 772.  Second,
election ensures unanimous jury verdicts and minimizes the risk that the jury
might convict due to the sheer weight of several alleged acts, rather than
proof of one or more crimes beyond a reasonable doubt.  See Phillips,
193 S.W.3d at 910.








Appellant
does not contend that the lack of an election deprived him of notice of the
State=s intent to rely, for the purposes of
conviction, upon the March 1 offense, that is, the first alleged act of
aggravated sexual assault.  See O=Neal, 746 S.W.2d at 772.  The indictment
expressly identified March 1, 2002 as the date of the charged offense.  The
second assault, it is claimed, occurred a few weeks later, on or about March
15, 2002.  Despite the close proximity between the two alleged offenses,
appellant was informed by the State=s Rule 404(b) notice[2]
that the State would introduce evidence of the second assault as an Aextraneous@ act.  Therefore, appellant has not
shown that his attorney=s decision not to request an election impaired his ability to
defend himself against the March 1 allegation.  See id.  However, that
defense counsel was aware of the State=s informal Aelection@ by virtue of the indictment and Rule
404(b) notice, does not mean that the issue was necessarily settled in the
minds of the jurors, who were not privy to the Rule 404(b) notice.

Thus,
the crux of appellant=s argument is premised upon the concern that, absent an
election, jurors may have voted to convict on differing offenses, thereby
depriving him of the right to a unanimous jury verdict.  See Phillips,
193 S.W.3d at 910.  Defense counsel responded by affidavit, and the State now
argues similarly, that the jury charge adequately informed the jury to consider
only the March 1 offense in deciding guilt:

[T]here was
no election required.  Jury charge required the jury to find on or about March
1, 2002.  The Application on page ten, last paragraph, referred to the 3/15/02
incident as an extraneous event.  The only two events are the offense on the
date of March 1, 2002 and the extraneous on March 15, 2002.  The Jury charge
required Aon or about@
March 1, 2002 and the Defendant is not entitled to any more specificity.

 

In denying appellant=s habeas application, the trial court
likewise concluded that A[b]ased on the charge submitted to the jury, Defense counsel
was not required to compel an election between offenses when only one specific
act was included in both the jury charge and the indictment.@  In this case, however, we are not
convinced that the jury charge sufficiently clarified for the jury which of the
two alleged incidents the State was relying upon for conviction.








Although
a valid jury charge does not necessarily substitute for an election,[3]
the jury charge should reflect that an election has taken place.  That is, had
counsel requested an election, appellant would have been entitled to an
instruction charging the jury to consider only the elected act in deciding
guilt, and limiting the jury=s consideration of the other unelected act to the purposes
for which it was admitted.  See Isenhower v. State, 261 S.W.3d 168, 174
(Tex. App.CHouston [14th Dist.] 2008, no pet.); Rivera v. State, 233 S.W.3d
403, 406 (Tex. App.CWaco 2007, pet. ref=d).  Although no election was
requested, appellant nonetheless received a limiting instruction in the jury
charge, which states as follows:

The
defendant, Justin Glaze Edmonds, stands charged by indictment with the offense
of Aggravated Sexual Assault, alleged to have been committed on or about the
1st day of March, 2002, in Fort Bend, Texas.

. . .

You are instructed that if there is any testimony before you in this
case regarding the defendant having committed offenses, if any, other than the
offense, if any, alleged against him in the indictment in this case, you cannot
consider said testimony for any purpose unless you find and believe beyond a
reasonable doubt that the defendant committed such other offenses, if any were
committed, and even then you may only consider the same for the following
purposes:

1)        to determine the motive, intent, scheme, or design, if any,
of the defendant,

2)        to determine the state of mind of the defendant and the
child, and,

 








3)        for its bearing on the previous and subsequent relationship
between the defendant and the child.

 

However, the charge also
instructed the jury that the State was not bound by the exact date alleged in
the indictment.  See Tex. Code Crim. Proc. Ann. art. 21.02(6)
(Vernon 1989); Wright v. State, 28 S.W.3d 526, 532 (Tex. Crim. App.
2000).  The complainant testified to two incidents of aggravated sexual assault
that occurred in Fort Bend County, Texas within a short time frame, and could
not further elaborate when the two incidents occurred in relation to each
other.  Based on the evidence presented at trial, then, the jury could have
believed that both the first and second offense occurred Aon or about March 1, 2002.@  See Isenhower, 261 S.W.3d at
175.  Therefore, the jury charge, by itself, does not instruct the jury to
consider only the first act in deciding appellant=s guilt.  See id.

However,
in some cases the evidence, trial court=s instructions, and arguments of
counsel may inform the jury as to the State=s Aelection@ even though the charge does not.  See
id. at 177; O=Neal, 746 S.W.2d at 772.  Although
appellant has not provided a complete record of the trial proceedings,[4]
the witnesses= trial testimony was inserted into defense counsel=s file, which is included in the
clerk=s record.  Having divined defense
counsel=s trial strategy from those records,
we cannot say that the decision to forego an election Aso undermined the proper functioning
of the adversarial process that the trial cannot be relied on as having
produced a reliable result.@  Thompson, 9 S.W.3d at 812B13.








Other
than the complainant and the appellant, who did not testify, there were no 
witnesses to the two alleged assaults.  Therefore, the State=s case turned entirely upon whether
the jury believed the complainant=s testimony.  Accordingly, trial
counsel focused appellant=s defense on casting doubts about the believability of the
complainant=s account. 

The
evidence reveals that the complainant=s outcry occurred in July 2003,
during a heated argument between the complainant and her parents.  That evening
the complainant, then 14, was granted permission to accompany her 18-year-old
boyfriend to the movies; however, a Montgomery County sheriff=s deputy discovered the couple Amaking out@ in a parked car.  The complainant=s  parents were telephoned, and they
picked her up at the scene.  During the ride home, there was a Avery heated argument@ between the complainant and her
parents, in which the parents outlined their daughter=s punishment.  After seeing that she
was Ain serious problems@ with her parents, and after learning
of the details of her punishment, the complainant disclosed the two alleged
assaults perpetrated upon her by the appellant, whom she knew to be disliked by
her father.  Defense counsel elicited the following additional testimony from
the complainant=s mother:

Q.        And when you picked her up to bring her back, were both you
and your husband very angry at her?

A.        Yes, sir.

Q.        All right.  And was she upset about y=all being angry at her?

A.        Yes, sir.

Q.        Or was she upset about something else?

A.        No, sir.

...

Q.        All right.  So, when y=all
were coming home and your daughter knew that her father disliked [appellant],
that=s when she told y=all
that story about [appellant]?

A.        Yes.








Q.        And it was also at a time where she was grounded and being
severely fussed at for whatever she was doing?

A.        Yes.

 

Defense counsel then
established, through testimony, that the complainant=s outcry succeeded in Astop[ping] the argument and
conversation that was going on.@

Then,
during appellant=s case-in-chief, counsel introduced the testimony of Quitta
Cooper Uresti, who claimed to have a close, confidential relationship with the
complainant.  Under direct examination, Ms. Uresti testified that she observed
nothing unnatural or inappropriate about the interactions between appellant and
the complainant, even several months after the alleged assaults took place. 
Defense counsel also had the following exchange with Ms. Uresti:

Q.        [H]as [the complainant] ever confided in you about any of the
events that we=re here about today?

A.        No, sir.

Q.        Prior to her moving to Houston, did you think y=all=s relationship
was such that, if she had problems, that she would confide in you?

A.        Yes, she would have.

 

From these passages,
defense counsel=s trial strategy becomes apparent.  His intent was to
discredit the complainant not based on the details of the alleged assaults
but, rather, on the suggestion that the complainant fabricated the entire
account in an effort to escape or lessen the severity of her parents= anger or planned punishment of her. 


Appellant
emphasizes a portion of the prosecutor=s closing argument in his brief to
support his contention that the absence of an election permitted the State to
urge the jury to convict on either of the two alleged assaults. However,
neither of the parties= closing arguments are contained in the record.  Therefore,
we do not consider them.  See Rasberry v. State, 535 S.W.2d 871, 873
(Tex. Crim. App. 1976).








In any
event, forcing the State to elect between two alleged offenses would not
necessarily benefit a defense that apparently was designed to show that both
offenses were fictional, and that the complainant=s outcry was invented to distract her
parents from punishing her.  In light of this trial strategy, which challenged
the complainant=s credibility on grounds other than the details of the two
alleged assaults, we are not convinced that the failure to request an election
prejudiced appellant=s defense.  See Strickland, 466 U.S. at 687, 694; Thompson,
9 S.W.3d at 813 (AAppellant bears the burden of proving by a preponderance of
the evidence that counsel was ineffective.@).  Because appellant fails to
satisfy the second prong of the Strickland test, we need not decide
whether counsel=s performance fell below an objective standard of
reasonableness.  See Strickland, 466 U.S. at 697; Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

                                                                CONCLUSION

Finding
no reversible error in the appellate record, we therefore affirm the trial court=s denial of appellant=s application for a writ of habeas
corpus.

 

 

 

/s/      J. Harvey Hudson

Senior Justice

 

 

Judgment Rendered and Memorandum
Opinion filed December 11, 2008.

Panel consists of Justices Anderson
and Frost, and Senior Justice Hudson.*

Do Not Publish.  Tex. R. App. P.
47.2(b).









            [1] Nor do we
evaluate defense counsel=s representation, as appellant intimates, by that
attorney=s performance in a different case.  Appellant notes
that, in an unrelated case, his trial counsel was found not to have conducted a
reasonable factual investigation and, consequently, not to have rendered
effective assistance to another defendant.  See Miller v. Dretke, 420
F.3d 356, 363B64 (5th Cir. 2005).  Generally, counsel has a duty to
make reasonable investigation into the controlling facts and law of a case, or
to make a reasonable decision that makes the particular investigation
unnecessary.  See Strickland, 466 U.S. at 691.  Thus, courts need not
defer to an attorney=s decisions that were uninformed by an adequate
investigation into the controlling facts and law.  U.S. v. Drones, 218
F.3d 496, 500 (5th Cir. 2000).

 

However, we decline to recast appellant=s contention as an inadequate-investigation claim. 
While counsel=s file does not indicate that he researched the issue
of election, neither does the record demonstrate that he was unaware of
the option to request an election where, as appellant concedes, the election
doctrine has been in place since at least 1870:

 

It is true that a defendant cannot be punished under
one indictment for two or more distinct offenses, committed at different times;
and when it becomes apparent, either from the indictment or the proof on the
trial, that the defendant is charged with different offenses, the prosecution
may be forced to elect which act shall be prosecuted.

 

State v. Bradley, 34 Tex. 95, 1871 WL 7359, at *3 (1870).  Therefore, we cannot accept
the premise that any strategic decision by counsel that is not buttressed by
legal research necessarily constitutes Ainadequate
investigation@ that enjoys no deference whatsoever.  See, e.g.,
Beheler v. State, 3 S.W.3d 182, 185B86
(Tex. App.CFort Worth 1999, pet. ref=d) (employing deference notwithstanding claim that
counsel=s election decision resulted from Alack of knowledge of the applicable case law@). 





            [2]  Upon a defendant=s timely request in a criminal case, the prosecution
must give reasonable notice of its intent to introduce evidence of crimes,
wrongs, or acts other than those that arise in the same transaction.  See
Tex. R. Evid. 404(b).





            [3]  See Phillips,
193 S.W.3d at 912.  The Court of Criminal Appeals explained that, because one
of the purposes for an election is to notify the defendant of the specific act
to be defended, a valid jury chargeCwhich
is not given until the end of trialCcannot,
by itself, constitute a de facto election.  See id. 

Hypothetically, such notice to the defendant could
arrive, as here, by the combination of an indictment specifying the date of the
charged act and a separate Rule 404(b) notice characterizing all other acts as
extraneous.  However, this alternative arrangement would still require that the
jury be sufficiently informed as to the specific act upon which the State was
relying for conviction.  See Isenhower v. State, 261 S.W.3d 168, 175
(Tex. App.CHouston [14th Dist.] 2008, no pet.).





            [4]  On January 10,
2008, after we notified the parties that no reporter=s record had been filed, appellant referred us to the
record from his direct appeal.  Generally, the appellate record in one case
cannot be used in another case.  See, e.g., Jones v. State, 931 S.W.2d
35, 38 n.1 (Tex. App.CHouston [1st Dist.]  1996, no pet.).  We note that
appellant has not filed a motion to transfer the reporter=s record from his direct appeal.  See, e.g., Webb,
244 S.W.3d at 546 n.7; Narmah v. Waller Indep. School Dist., 257 S.W.3d
267, 268 (Tex. App.CHouston [1st Dist.] 2008, no pet.).  Our review is
limited to the evidence properly in the record before us.  See Rasberry v.
State, 535 S.W.2d 871, 873 (Tex. Crim. App. 1976); Goodchild v.
Bombardier-Rotax GMBH Motorenfabrick, 979 S.W.2d 1, 9 (Tex. App.CHouston [14th Dist.] 1998, pet. denied).





            * 
Senior Justice J. Harvey Hudson sitting by assignment.