**AFFIRMED; and Opinion Filed August 4, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00943-CV**

**BRP-ROTAX GMBH & CO. KG, Appellant**
**V.**
**SHEEMA SHAIK AND TOUSEEF SIDDIQUI, Appellees**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-19-03101-E**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Smith
Opinion by Justice Smith

Appellant BRP-Rotax GMBH & Co. KG appeals the trial court's interlocutory order denying its special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7). In four issues, BRP-Rotax argues that the trial court's jurisdictional ruling is unsupported by legally and factually sufficient evidence. Because we conclude that BRP-Rotax purposefully availed itself of Texas under the "stream of commerce-plus" test, that the claims on which the suit is based arise from or relate to BRP-Rotax's activities in Texas, and that exercising jurisdiction over BRP-Rotax would not offend traditional notions of fair play and substantial justice, we affirm.

## Factual Background and Procedural History

BRP-Rotax is a foreign corporation, formed under the laws of Austria. BRP-Rotax primarily designs, manufacturers, sells, and provides product support for Rotax engines used in ultralight and light aircrafts. Its principal place of business is in Austria.

One of its engines was sold to Excite Aircraft, Inc., d/b/a US Sport Aircraft, Inc. in Texas through Lockwood Aviation Supply, Inc., an independent Service Centre of Kodiak Research, Ltd., a company based in the Bahamas. Kodiak purchased, marketed, sold, and distributed Rotax engines from BRP-Rotax under a distribution agreement, which required Kodiak to market and sell the engines to consumers in the United States. Lockwood was based in Sebring, Florida. The engine was installed into a Piper Sport airplane as a replacement engine and, on March 10, 2018, the engine allegedly suffered a sudden loss of power after take-off and crashed at an airport in Addison, Texas. Appellee Sheema Shaik was on board as a student pilot at the time of the crash and suffered serious injuries, including a traumatic brain injury, multiple fractures, and severe burns. Her husband, appellee Touseef Siddiqui, witnessed the crash from a nearby plane.

Appellees sued BRP-Rotax, as well as other parties associated with designing, manufacturing, selling, distributing, or selecting the Rotax engine or the Piper aircraft involved in the crash, for strict products liability, negligence, and gross negligence. BRP-Rotax filed a special appearance challenging the trial court's

personal jurisdiction. After the parties conducted jurisdictional discovery, appellees responded to BRP-Rotax's special appearance and BRP-Rotax filed a reply. The trial court held a hearing and issued an order denying BRP-Rotax's special appearance. Subsequently, the trial court alerted the parties that the order had been issued by mistake, held a second hearing, and again denied the special appearance. This appeal followed.

BRP-Rotax's brief on appeal asserts the following four issues:

(1) The trial court's jurisdictional ruling is unsupported, both legally and factually.

(2) BRP-Rotax showed that the evidence is factually and legally insufficient to establish jurisdiction because it has no contacts with Texas, and thus the claims fall short of the purposeful availment necessary for jurisdiction to attach; the claims do not arise from any contacts by BRP-Rotax supporting specific jurisdiction; and traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction here.

(3) Appellees waived any general jurisdiction claim and cannot meet the requirements of specific jurisdiction under the disputed facts.

(4) There is no jurisdiction under the "stream of commerce-plus" test as established and interpreted by the Texas courts.

Because BRP-Rotax's four issues intertwine the requirements necessary to establish specific jurisdiction, we treat them as one global issue of whether the trial court erred in denying BRP-Rotax's special appearance.

**Personal Jurisdiction**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *Old Republic Nat'l Title Ins.*

–3–

*Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). Often, however, a trial court must resolve questions of fact before deciding the question of jurisdiction. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court does not issue findings of fact and conclusions of law in conjunction with its special appearance ruling such as in the case here, all facts necessary to support the judgment that are supported by the evidence are implied. *Id.* at 795. These implied findings may be challenged for legal and factual sufficiency when the appellate record includes the reporter's and clerk's records. *Id.* If the relevant facts are undisputed, the appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish personal jurisdiction. *Old Republic*, 549 S.W.3d at 558.

Texas courts may assert personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute is satisfied when a nonresident defendant does business in Texas, which includes "commit[ing] a tort in whole or in part" in Texas. TEX. CIV. PRAC. & REM. CODE § 17.042(2); *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021); *Moki Mac*, 221 S.W.3d at 574. The exercise of personal jurisdiction over such nonresident defendant is constitutional when (1) the nonresident defendant has established minimum contacts with the forum state and

–4–

(2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795.

A nonresident defendant's contacts with the forum state can give rise to general or specific jurisdiction. *Luciano*, 625 S.W.3d at 8. General jurisdiction is not at issue in this case. Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to the defendant's activity conducted within the forum state. *BMC Software*, 83 S.W.3d at 796. The Supreme Court of the United States has recently explained that, "[w]hen a company . . . serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1022 (2021).

The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff has met the initial burden of pleading sufficient jurisdictional allegations, the defendant bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* If the defendant presents evidence in its special appearance disproving the plaintiff's jurisdictional allegations, the burden shifts back to the plaintiff to establish the court has personal jurisdiction. *Id.* at 659. The plaintiff

–5–

should amend the petition if it lacks sufficient allegations to bring the defendant under the long-arm statute or if the plaintiff intends to present evidence that supports a different basis for jurisdiction than what was previously pleaded. *Id.* at 659, 659 n.6.

## Appellees' Jurisdictional Allegations

In their third amended petition, the petition that was live at the time BRP-Rotax filed its special appearance, appellees alleged that BRP-Rotax "has been doing business in the state of Texas." Appellees further alleged that "BRP-Rotax has been engaged in the design, manufacture, product support, and sale of engines used in aircraft . . . including the 'Rotax' engine, which was installed on certain ultralight aircraft, including the subject aircraft involved in the incident made the basis of this lawsuit on March 10, 2018." Appellees also generally alleged that the trial court had jurisdiction over the parties because "all defendants either resided in Texas or have purposefully availed themselves of the privileges and benefits of owning property or doing business in Texas and the claims herein arise from or relate to defendants' contacts with Texas."

Appellees' third amended petition satisfies their initial pleading burden to bring BRP-Rotax within the provisions of the Texas long-arm statute by alleging that BRP-Rotax conducted business in Texas and that the claims asserted in the lawsuit arose out of and were related to its activities in Texas. *See Far E. Mach. Co. v. Aranzamendi*, No. 05-21-00267-CV, 2022 WL 4180472, at *4 (Tex. App.—

Dallas Sept. 13, 2022, pet. denied) (mem. op.) (plaintiff met initial burden of pleading sufficient allegations to permit court's exercise of personal jurisdiction by pleading defendant "is engaged in business in the State of Texas"); *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.) (en banc) ("A plaintiff's petition satisfies the long-arm statute when it alleges the defendant did business, which includes committing a tort in whole or in part in Texas.").

We now turn to whether BRP-Rotax presented evidence in its special appearance disproving appellees' jurisdictional allegations. *See Kelly*, 301 S.W.3d at 658-659.

### BRP-Rotax's Special Appearance Evidence

BRP-Rotax attached to its special appearance a declaration by Peter Oelsinger, its General Manager and Vice President of Sales, Marketing RPS-Business & Communication. Oelsinger declared that BRP-Rotax designed and manufactured Rotax aircraft engines exclusively at its facilities in Gunskirchen, Austria. BRP-Rotax sold its aircraft engine products to independent distributors outside of Texas and the United States. According to Oelsinger, BRP-Rotax did not maintain any control over, and had no knowledge of, who would be the ultimate end-user or purchaser of the engine or where such engine would be used. Additionally, any repairs or support services for Rotax products were conducted by independent service or repair centers.

–7–

As to the specific engine at issue in this case, Oelsinger declared that it was sold to Kodiak in Austria (F.O.B. Austria), Kodiak shipped the engine from Austria to the Bahamas, and then the engine was sold by Kodiak (F.O.B. Bahamas) with no involvement by BRP-Rotax. Oelsinger further declared that BRP-Rotax:

- does not design or manufacture Rotax engines within Texas;

- did not enter into any contracts with appellees or any Texas residents for the sale, installation, or repair of any Rotax engines;

- does not do business in Texas;

- does not maintain a principal or regular place of business or offices in Texas;

- does not own or lease any real property in Texas;

- does not have any manufacturing plants in the United States;

- has never had an office, post-office box, telephone number, or fax number in Texas;

- does not have any employees, executives, or agents permanently located or working in Texas;

- has no back accounts within Texas;

- has never paid income or employment taxes in Texas;

- does not sell any Rotax engines into Texas;

- did not make any sales to any consumers or end-users in Texas;

- has not sold any aircraft engine products to any Texas resident through its website or otherwise;

- has never solicited business in Texas;

- does not generate Texas-specific advertising materials or advertise in Texas;

- has not traveled to Texas to seek business clients;

- has never signed a contract in Texas;

- does not have any distribution agreement with a distributor based in Texas or the United States;

- does not direct product support specifically to Texas; and

- does not perform any repairs on Rotax engines.

Oelsinger's declaration sufficiently negated appellees' jurisdictional allegations thus shifting the burden back to appellees to establish the trial court had personal jurisdiction over BRP-Rotax. *See id.* Therefore, we next turn to whether appellees carried their burden in response to BRP-Rotax's special appearance, other pleadings, affidavits, and attachments to establish that the trial court did have specific jurisdiction over BRP-Rotax as pleaded. *See* TEX. R. CIV. P. 120a(3) ("The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony.").

**Appellees' Amended Jurisdictional Allegations**

Before responding to BRP-Rotax's special appearance, appellees amended their petition several times. In their final and sixth amended petition, appellees alleged that "[a]t all times relevant to this lawsuit, BRP-Rotax conducted business into and within the state of Texas, this lawsuit arose from BRP-Rotax's business in

Texas, and BRP-Rotax is subject to the *in personam* jurisdiction of this Court." Appellees further alleged that "BRP-Rotax intentionally placed its component part product (ie, the subject Rotax 912 engine for light or ultralight aircraft) into the stream of commerce and moved it along as a part destined for sale in a finished product to be sold in Texas." According to appellees, BRP-Rotax purposefully availed itself of the benefits of conducting business in Texas and could have reasonably foreseen being sued in Texas "given the regular, anticipated flow of their products into Texas." To illustrate BRP-Rotax's minimum contacts with Texas, appellees included a laundry list of BRP-Rotax's contacts and activities in Texas that gave rise to the claims at issue. Included in the list, was appellees' assertion that they were Texas residents and that the subject aircraft was leased and operated by a Texas resident who owned the flight school where appellees were taking flying lessons. The crash and appellees' damages occurred in Texas.

It is these jurisdictional allegations that ultimately frame our review of whether appellees carried their burden to establish that the trial court had specific jurisdiction over BRP-Rotax. *See Kelly*, 301 S.W.3d at 658 n.4, 659, 659 n.6; *Saidara*, 633 S.W.3d at 128–129.

### Minimum Contacts with Texas

To exercise specific jurisdiction over a nonresident defendant, the defendant's contacts with the forum state must be purposeful and the cause of action must arise from or relate to those contacts. *Moki Mac*, 221 S.W.3d at 575–76. We therefore

–10–

focus on the relationship among the forum, the defendant, and the litigation. *Id.* To determine whether a defendant's contacts are purposeful, the court should consider only the defendant's contacts with the forum state, not the unilateral activity of a third party. *Id.* at 575. The contacts cannot be random, fortuitous, or attenuated, and the defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction. *Id.* "A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

As the Supreme Court of Texas recently explained, courts often use the "stream-of-commerce-plus" test to determine whether a defendant in a products liability case purposefully availed itself of the forum state:

> Under a stream-of-commerce-plus framework, "'a nonresident who places products into the "stream of commerce" *with the expectation that they will be sold in the forum state*' may be subject to personal jurisdiction in the forum." In contrast, *mere foreseeability* that a product might ultimately end up in a particular forum does not alone constitute purposeful availment. When the stream of commerce only fortuitously deposits a product in the forum state, a nonresident

manufacturer will be subject to the forum's jurisdiction only if additional conduct—often referred to as a "plus factor"—evinces the manufacturer's intent to serve that market. This analytical construct is frequently used in products-liability cases to determine whether specific jurisdiction exists. When a nonresident manufacturer has no knowledge, care, or control over where a product ends up, this and other courts require some "plus factor" to establish purposeful availment. Examples include "marketing the product through a distributor who has agreed to serve as the sales agent in the forum [s]tate" or "creating, controlling, or employing the distribution system that brought the product into the forum state."

*State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 417 (Tex. 2023) (internal footnotes and citations omitted; emphasis in original).

For a cause of action to arise from or relate to the nonresident defendant's contacts, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585. A plaintiff's claim does not have to arise "but for" the defendant's contacts, and the defendant's contacts are not required to be the "proximate cause" of liability. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 52–53 (Tex. 2016). "Instead, we consider what the claim is 'principally concerned with,' *Moncrief Oil [Int'l Inc. v. OAO Gazprom]*, 414 S.W.3d [142,] 157 [Tex. 2013], whether the contacts will be 'the focus of the trial' and 'consume most if not all of the litigation's attention,' and whether the contacts are 'related to the operative facts' of the claim, *Moki Mac*, 221 S.W.3d at 585." *Id.* at 53. "[I]f the actionable conduct occurs in Texas, we have never required that the lawsuit also arise directly from the nonresident defendant's additional conduct." *Luciano*, 625 S.W.3d at 18. "The relevance of the additional conduct . . . is not to

establish that those contacts constitute [defendant's] minimum contacts with Texas, but to establish that the actionable conduct in Texas itself constitutes minimum contacts" by showing that the defendant purposefully availed itself of Texas. *TV Azteca*, 490 S.W.3d at 54.

In its response to BRP-Rotax's special appearance, appellees included numerous exhibits supporting their argument that the trial court had personal jurisdiction over BRP-Rotax in this case. The evidence showed that Kodiak was one of fifteen distributors for BRP-Rotax engines to over 200 countries worldwide with each distributor being assigned a specific territory. Under an International Aircraft Engine Distribution Agreement, which had been in effect since July 2001, Kodiak was, for all intents and purposes, the exclusive distributor of certain Rotax engines in its assigned territory and was responsible for establishing, operating, and maintaining an adequate dealer organization, including authorized repair and service centers, in its territory. Kodiak's territory consisted of the United States, Central America, and South America. Only if Kodiak failed to adequately promote and distribute the engines or service its customers in its assigned territory would BRP-Rotax appoint an additional distributor to the territory. Thus, Kodiak was required to meet a minimum quota to maintain the parties' distribution agreement.

The agreement required Kodiak to "ensure that it and the dealers advertise, display, and demonstrate [the engines] including safety features" and "encourage and assist the dealers to . . . sell [the engines] to the public." Kodiak agreed to stock

–13–

replacement parts and accessories only directly sourced from, or approved in writing by, BRP-Rotax. Kodiak was further required to "clearly identify its place of business as that of an authorized ROTAX Aircraft Engine DISTRIBUTOR and/or ROTAX Aircraft Engine Repair Center with suitable signs and displays," which had to be submitted to BRP-Rotax for approval before using.

In addition, the agreement required Kodiak to submit annual financial statements, as well as monthly sales and inventory as requested, and keep separate registries for repair and services done under warranty. The supplement to the agreement further required Kodiak to report back to BRP-Rotax all "failures, malfunctions, defects, or other occurrences of the [engines] in the Territories which cause or might cause adverse effects on the continuing airworthiness of the [engines]." BRP-Rotax provided Kodiak with a "Checklist for reporting of failures, malfunctions and defects" in order to comply. Kodiak was responsible for ensuring that the dealers honored BRP-Rotax's limited warranty on the engines by performing any authorized repairs free of charge to the customer. Kodiak would be compensated for such work per the terms of the distribution agreement. Kodiak was also responsible for any verification, certification, replacement, maintenance, or repairs that BRP-Rotax required. The distribution agreement further provided that BRP-Rotax and Kodiak "agree that proper training, including participation at [BRP-Rotax] annual training schools, for [Kodiak] appropriate service managers and

employees, in the repair and service of [the engines] is essential for the success of both [BRP-Rotax and Kodiak]."

Rotax's website, www.flyrotax.com, provides interested parties the ability to click on each of its distributors to learn more information, to register an engine once purchased "for global support," and to "[t]alk to a Rotax expert near you," which allowed a customer to find a nearby service or repair center. The website boasts: "Fifteen authorized distributors and 220+ independent service and repair centers worldwide make sure you have quick and easy access to reliable service, genuine parts, and responsive warranty support." The website further provides, "We staff and equip service operations across the Rotax network with one goal in mind: to help you minimize cost and grounding." "At every certified service and repair centers, Rotax-trained support have access to our vast knowledge base, the latest genuine parts, and specialized tools to keep your pit stop short and cost-effective, wherever you are."

The evidence also showed that one such repair center, Texas Rotax and Light Sport Aircraft, LLC (Texas Rotax), was located in Bulverde, Texas. Its website advertised that it was "South Texas' Only Authorized Independent Repair Centre." The website further claimed, "We submitted all the paperwork to become an official Rotax Independent Repair Centre (IRC) in 2016 and were accepted as an official Independent Repair Centre (IRC) located in Bulverde, Texas in January of 2017. As such, we can offer warranty work and help customers deal with Rotax on service

issues." BRP-Rotax's corporate representative, Marc Becker, who was the new manager of the aircraft business section of BRP-Rotax, testified in his deposition that, to his knowledge, no one from BRP-Rotax had ever visited Texas Rotax, nor did BRP-Rotax have any contracts with Texas Rotax. Becker denied that BRP-Rotax authorized Texas Rotax as an official Rotax repair center and testified that such approval would have been through Kodiak.

In the ten years prior to the lawsuit, BRP-Rotax sold 5,241 engines to Kodiak and 624 engines to Rotech Motor Ltd. (a Canadian company that distributed a different compliant aircraft than Kodiak), both of which were authorized to distribute to the United States. A consumer could not purchase an engine directly from Kodiak but instead had to go through one of its three designated distribution centers in the United States: Lockwood in Florida, Leading Edge Air Foil in Wisconsin, and California Power Systems in California. Approximately 150 engines were registered in Texas, although the evidence showed that a consumer had to self-register the engine on BRP-Rotax's website; thus, it was possible that more engines were purchased by Texas residents but not registered. An engine could also arrive in Texas through a subsequent sale of an airplane in which the engine had been installed even though the engine was initially purchased from one of the other fifteen worldwide distributors. Based on BRP-Rotax's sale of 180,000 engines worldwide since 1973, 50,000 of which were the four-stroke 912 series engine at issue in this case, appellees asserted that BRP-Rotax sold 1,020 engines at issue per year on

average. Thus, appellees claimed the approximately 150 engines that were registered in Texas from 2016 through 2020 accounted for a sizeable percentage of BRP-Rotax's worldwide market.

BRP-Rotax maintains on appeal that it took no action to direct engines to Texas and that it should not be subject to specific jurisdiction simply because its engines end up in Texas by mere happenstance through the unilateral actions of third parties. BRP-Rotax argues that it manufactured and sold the engine in question in Austria and that it "did not create, control, or employ" the distribution system that brought its product to Texas. Our review of the record leads us to conclude otherwise.

The fact that the Rotax engine at issue in this suit was not first sold, manufactured, or designed in Texas does not preclude a Texas court from having personal jurisdiction over BRP-Rotax. *See Ford*, 141 S. Ct. at 1026 (rejecting Ford's argument that jurisdiction existed "in only the States of first sale, manufacture, and design" and explaining, "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do"). The phrase "relate to the defendant's contacts with the forum" encompasses cases in which a company "serves a market for a product in the forum State and the product malfunctions there," regardless of whether the exact product at issue was first sold, manufactured, or designed in the forum state. *Id.* at 1026–27, 1029.

Relying on *World-Wide Volkswagen Corp. v. Woodson*, the Supreme Court explained:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, direct or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* at 1027 (alterations in original) (quoting 444 U.S. 286, 297 (1980)). Thus, "where title passed is 'beside the point' in the specific-jurisdiction analysis." *Luciano*, 625 S.W.3d at 11.

Like Ford, BRP-Rotax is a global company; "its business is everywhere." *Ford*, 141 S. Ct. at 1022. It markets and sells its Rotax engines through distributors worldwide. And it ensures that consumers can keep their engines running by requiring its distributors to maintain repair and service centers, which are stocked with BRP-Rotax parts, throughout their assigned territories. *See id.* at 1022–23, 1028. Although we agree that BRP-Rotax's additional conduct in Texas is not as pervasive as Ford's additional conduct in Montana and Minnesota, *see id.* at 1022, 1028, we agree with appellees that it is the relationship with the forum state, not the pervasiveness of the contacts, that establishes specific jurisdiction. *See Moki Mac*, 221 S.W.3d at 577 ("[A] single contact can support jurisdiction if that contact creates a 'substantial connection' with the forum.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)). For example, in *Luciano*, the

defendant's contacts with Texas were not as pervasive as Ford's contacts with the forum states; nevertheless, the Supreme Court of Texas held that the defendant's activities of using a distribution center in Grand Prairie, even though it was acquired through a Colorado-based logistics company, and retaining an independent local sales representative evinced an intent to serve the Texas market. 625 S.W.3d at 10–14. The Court recognized that "specific jurisdiction over nonresident manufacturers is often premised on 'indirect' sales by independent distributors or agents." *Id.* at 9.

As to the specific Rotax engine at issue in this case, the special appearance evidence shows that BRP-Rotax, through Kodiak and its South Texas repair center, served a market in Texas for the very engine that appellees alleged malfunctioned and caused them injury in this state. *See Ford*, 141 S. Ct. at 1028 ("Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States."). BRP-Rotax's assertion that it "did not create, control or employ" the distribution system that brought its product to Texas is not supported by the record. BRP-Rotax required its distributors to market and sell its engines in their assigned territories to BRP-Rotax's satisfaction or risk being pulled from the territory or having another distributor brought in to share the territory. Although BRP-Rotax may not have micromanaged each decision made by Kodiak to market, sell, and maintain BRP-Rotax engines in the United States, BRP-Rotax directed and indeed contracted with Kodiak to do just that. And in performing its distribution agreement with BRP-Rotax, Kodiak ensured

that consumers who purchased engines in Texas could have them repaired there with BRP-Rotax parts by BRP-Rotax trained technicians.

BRP-Rotax did not simply allow its product to "go someplace as directed by a customer" as it claims. BRP-Rotax directed Kodiak to serve the U.S. market, which includes Texas, and its engines were sold to Texas residents through the distribution chain. *See, e.g.*, *LeBlanc v. Kyle*, 28 S.W.3d 99, 101, 104–05 (Tex. App.—Texarkana 2000, pet. denied) (concluding French company's contract with distribution company to sell its product to "'the fifty states' demonstrate[d] a purposeful effort to serve the United States market, which includes Texas"). The Supreme Court of Texas recently explained how importer agreements directing sales throughout the United States can show that a foreign manufacturer purposefully availed itself of Texas:

> The defendant need not single Texas out in some unique way to satisfy constitutional dictates. To hold that a nonresident who has directed activity to *every* state is not amenable to jurisdiction in *any* state would unduly constrain the authority of state courts to hold nonresidents accountable for their in-state conduct and would convert the specific-personal-jurisdiction analysis into a wholly subjective inquiry into the defendants' state of mind.

*Volkswagon*, 669 S.W.3d at 420. If we were to agree with BRP-Rotax's argument that it did not purposefully avail itself of Texas specifically but only directed sales to the United States generally, appellees would be left with "no avenue of redress in *any* jurisdiction because *none* would have jurisdiction despite—and indeed *because of*—the [engine]makers' pervasive scheme." *Id.* (emphasis in original).

–20–

The Supreme Court of Texas concluded that the trial court had personal jurisdiction over the German manufacturers in *Volkswagen* even though their contacts with Texas were "accomplished through direct and indirect control over instrumentalities and intermediaries." *Id.* at 405. There, the German manufacturers did not have a contractual relationship with or direct control over any of the American dealerships. *Id.* at 407. Instead, the operations of the American dealerships were controlled by VW America, with which the German manufacturers had importer agreements. *Id.* Similar to the agreements in this case, the importer agreements in *Volkswagen* required VW America to "establish, develop and maintain a competent, effective[,] and customer oriented after sales service to be provided through its [dealerships]," to perform recall campaigns initiated by the German manufacturers, and to perform warranty repairs or maintenance service per the manufacturers' "instructions, guidelines[,] and/or procedures." *Id.* (alterations in original).

Here, like in *Volkswagen*, BRP-Rotax actively took steps to ensure that its product reached the United States, including Texas, and that Texas consumers could maintain their engines at a facility in Texas by BRP-Rotax certified staff with BRP-Rotax parts. Like the manufacturers in *Volkswagen*, BRP-Rotax also paid for approved warranty work in the repair centers set up according to the distribution agreement. *See id.* at 426. Thus, we conclude that BRP-Rotax purposefully availed itself of doing business in Texas.

–21–

We also conclude that appellees' claims arise from or relate to BRP-Rotax's contacts with Texas. Appellees were Texas residents, who were injured in an airplane crash in Texas when BRP-Rotax's engine allegedly suffered a power loss. The airplane was also leased and operated by a Texas resident, and the engine had been purchased and installed by a Texas company. As we have discussed above, BRP-Rotax served Texas through its distribution network with the very engine that allegedly malfunctioned here. Thus, appellees' claims for products liability, negligence, and gross negligence regarding the engine malfunction and resulting plane crash relate to BRP-Rotax's contacts with Texas. *See Ford*, 141 S. Ct. at 1026–27, 1029.

BRP-Rotax urges us to rely on a Houston case from over twenty years ago, which concluded that the trial court did not err in granting the special appearance of BRP-Rotax's predecessor in a similar lawsuit regarding an airplane crash. *See Goodchild v. Bombardier-Rotax GMBH, Motorenfabrick*, 979 S.W.2d 1, 7–9 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (op. on reh'g). Missing in this prior case is any evidence of the distribution agreement. Further missing is evidence of the number of engines that were registered in Texas and evidence of a certified repair center in Texas. Therefore, the conclusion in the prior case that the trial court did not have personal jurisdiction over BRP-Rotax's predecessor is inapplicable to our analysis here. *See LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 350 (Tex. 2023) ("The result in each case is, of course, dependent on the particular record before the

court, including the evidence presented to establish the existence of both purposeful availment and relatedness.").

We conclude that appellees presented legally and factually sufficient evidence to establish that BRP-Rotax purposefully availed itself of the Texas market and that appellees' causes of action arose from or related to BRP-Rotax's contacts with Texas.

### Fair Play and Substantial Justice

To be consistent with federal and state constitutional due process guarantees, the exercise of personal jurisdiction over a nonresident defendant must also comply with traditional notions of fair play and substantial justice. *Moncrief Oil*, 414 S.W.3d at 154. Rarely will the exercise of personal jurisdiction over a nonresident defendant not comport with due process guarantees when the nonresident defendant has purposefully availed itself of the forum state and, thus, established minimum contacts with the forum. *Id.* at 154–55. This is because "[r]equiring nonresidents to comply with the laws of the jurisdictions in which they choose to do business is not unreasonable, burdensome, or unique." *TV Azteca*, 490 S.W.3d at 56. "To avoid jurisdiction, the defendant would have to present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Volkswagen*, 669 S.W.3d at 432 (quoting *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991) (quoting *Burger King*, 471 U.S. at 477)).

BRP-Rotax did not specifically address this prong of specific jurisdiction in its opening brief, although it lists the issue within its second issue presented on appeal. In its reply brief, BRP-Rotax contends that traditional notions of fair play and substantial justice are offended because it has insufficient purposeful contacts with Texas to require it to defend suit in Texas. Because we have concluded otherwise, we disagree.

To determine whether exercising personal jurisdiction over a nonresident defendant comports with traditional notions of fair play and substantial justice we examine the following factors, if applicable: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Moncrief Oil*, 414 S.W.3d at 155.

BRP-Rotax should not be surprised that it must defend this suit in Texas. Through its distribution agreement to target the United States, Texas consumers registering their engines on BRP-Rotax's website, and BRP-Rotax's participation in warranty claims by Texas residents, BRP-Rotax was on notice that it could be subject to suit in Texas if its engines malfunctioned there. *See Ford*, 141 S. Ct. at 1030. Although subjecting BRP-Rotax to suit in Texas may be burdensome because the distance between Austria and Texas is great, distance alone cannot defeat

–24–

personal jurisdiction. *See id.* "[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Furthermore, Texas has a strong interest in adjudicating personal injury actions of Texans. *See Luciano*, 625 S.W.3d at 19.

Adjudicating this dispute in Texas also advances appellees' and the judicial system's interest in reaching an efficient resolution given that BRP-Rotax is not the only party to the dispute and, thus, "Texas will host the adjudication of [appellees'] claims in this case whether [BRP-Rotax is] present or not." *TV Azteca*, 490 S.W.3d at 56; *see also Spir Star AG v. Kimich*, 310 S.W.3d 868, 879 (Tex. 2010) (it is "more efficient to adjudicate the entire case in the same place"). Finally, Texas, much more than Austria, has a strong interest in furthering the fundamental social policy of ensuring aircraft engines are safe for Texas citizens to use. *See Ford*, 141 S. Ct. at 1030.

Therefore, we conclude that this is not one of those rare cases in which exercising personal jurisdiction over a nonresident defendant that has established minimum contacts with the forum does not comport with traditional notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 154–55.

**Conclusion**

Because we conclude that BRP-Rotax purposefully availed itself of the privilege of conducting business in Texas, that appellees' claims arise from or relate

to BRP-Rotax's contacts with Texas, and that traditional notions of fair play and substantial justice are not offended by exercising jurisdiction over BRP-Rotax, we overrule BRP-Rotax's issues on appeal and affirm the trial court's order denying BRP-Rotax's special appearance.

220943f.p05

/Craig Smith//
CRAIG SMITH
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BRP-ROTAX GMBH & CO. KG,
Appellant

No. 05-22-00943-CV     V.

SHEEMA SHAIK AND TOUSEEF
SIDDIQUI, Appellees

On Appeal from the County Court at
Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-19-03101-E.
Opinion delivered by Justice Smith.
Justices Molberg and Carlyle
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees SHEEMA SHAIK AND TOUSEEF SIDDIQUI recover their costs of this appeal from appellant BRP-ROTAX GMBH & CO. KG.

Judgment entered this 4th day of August 2023.