

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00391-CV

_____

PRIMARY MEDIA GROUP, INC., Appellant

V.

LT RANCH PROPERTIES, LLC, Appellee

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV24-1475

---

Before Sudderth C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I.  INTRODUCTION

Appellant Primary Media Group, Inc. (PMG) appeals the trial court's order denying PMG's motion to substitute party and awarding Appellee LT Ranch Properties, LLC (LT Ranch) attorney's fees and costs.

In three appellate issues, PMG argues that the trial court erred by (1) denying PMG's motion to substitute party, (2) denying PMG's motion to compel the deposition of LT Ranch's designated representative, and (3) awarding LT Ranch attorney's fees and costs.  We will affirm in part and reverse in part.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Cowser Corporation and a company called "Primary Media" entered into an outdoor advertising sign ground lease.[1]  The lease commenced on April 15, 2009, and provided Primary Media with the right to access and maintain an outdoor sign on Cowser's property for a fifteen-year term with subsequent successive terms. In August 2015, Cowser conveyed the property to LT Ranch.[2]

In March 2024, LT Ranch sent Primary Media notice that the lease would expire on April 15, 2024, without renewal or extension.  The notice stated that Primary Media had to remove its sign within sixty days after the lease's expiration and

---

[1]Josh Feferman signed the lease as "Managing Partner" on behalf of "Primary Media."

[2]Cowser and LT Ranch executed an assignment and assumption of the lease.

that LT Ranch would consider the sign abandoned if it was not timely removed. Primary Media responded to the notice and rejected LT Ranch's portrayal of the lease's expiration date.

In April 2024, Primary Media's representatives entered LT Ranch's property after the lease's expiration date and allegedly cut down trees and vegetation around the sign. In September 2024, Primary Media's representatives attempted to enter LT Ranch's property again but were allegedly denied access to the sign.

Contending that LT Ranch had violated the lease and that PMG had standing and capacity to sue under the lease, PMG applied for a temporary restraining order and injunctive relief and filed an original petition for (1) breach of contract, (2) conversion and theft, (3) trespass, and (4) declaratory judgment. The trial court granted a temporary restraining order and a temporary injunction. LT Ranch filed its answer, brought a counterclaim against PMG for the alleged April 2024 trespass on its property and requested attorney's fees. In turn, PMG sent discovery requests to LT Ranch and sought to depose its designated representative.

In November 2024, LT Ranch—believing that PMG was not Primary Media and thus was not a party to the lease—filed an amended answer, asserting a verified denial that PMG "ha[d] capacity or standing to bring any claims under the [l]ease" and raising affirmative defenses that PMG's claims were barred by the statute of limitations and an inability to recover "under the [p]urported [l]ease because it lack[ed] capacity or standing, or both."

LT Ranch then moved for partial traditional summary judgment on PMG's breach-of-contract claim, asserting that the claim was barred by the statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(1) (requiring a suit seeking specific performance of a contract for the conveyance of real property to be brought "not later than four years after the day the cause of action accrues"). LT Ranch also moved to quash PMG's notice of deposition, asserting that PMG was not the proper plaintiff in the suit. In response, PMG also moved for partial traditional summary judgment on its breach-of-contract claim.

In February 2025, PMG filed a motion to substitute party, explaining that "[u]pon further review, and in response to correspondence from LT Ranch's counsel,[3] it has been determined that [PMG] was improperly named as the plaintiff in this action. The correct party in interest and proper Plaintiff is Primary Media Ltd. [(PML)[4]]" and that the "naming error was inadvertent and does not alter the claims or facts asserted in this case. The substitution is sought to correct the record and

---

[3]LT Ranch's attorney sent several letters to PMG's attorney regarding PMG's lack of standing.

[4]The lease makes no mention of PMG or PML. Josh Feferman signed the lease as managing partner of Primary Media, but neither PMG nor PML have an assumed name of "Primary Media." PML's general partner is Marshmallow Management, LLC, and Feferman is President of both PMG and Marshmallow Management. He is not, however, the managing partner of PML or Marshmallow Management. And, like PMG and PML, Marshmallow Management is not listed as a party on the lease. Consequently, LT Ranch contends that Feferman "signed the Purported Lease either as an individual sole proprietor doing business as 'Primary Media' or, more likely, as the 'Managing Partner' of a general partnership doing business as 'Primary Media.'"

4

properly reflect the real party in interest."[5]  That same day, PMG filed a first amended petition,[6] requested a hearing on the dueling motions for summary judgment, and moved to compel the deposition of LT Ranch's designated representative.

On February 25, 2025, the trial court granted LT Ranch's motion for partial summary judgment on PMG's breach-of-contract claim.[7]  LT Ranch then moved to dissolve the temporary injunction and moved for traditional summary judgment on all of PMG's remaining claims, arguing that PMG lacked capacity or standing to pursue any claims under the lease and that PMG had admitted as much in its motion to substitute party.

In response, PMG filed a second amended petition that named PML as the plaintiff in place of PMG, arguing that it had "mistakenly identified itself as '[PMG]' rather than as '[PML]'" in its original petition and that the "mistake constituted a misnomer."  PMG responded to LT Ranch's traditional motion for summary judgment, asserting that the misnomer had been corrected by filing the second

---

[5]PMG's motion to substitute party did not assert that its naming in the original petition was a misnomer; instead, it relied upon Texas Rules of Civil Procedure 28, 37, and 41 as grounds to substitute itself with PML.  *See* Tex. R. Civ. P. 28, 37, 41.

[6]In its first amended petition, PMG claimed that LT Ranch was also liable under the Texas Theft Liability Act (TTLA).  *See* Tex. Civ. Prac. & Rem. Code §§ 134.001-.005.

[7]PMG does not appeal the summary-judgment order on its breach-of-contract claim.

5

amended petition naming PML as the plaintiff and arguing that LT Ranch had incorrectly relied on alleged admissions in PMG's motion to substitute party.

Contending that PMG had admitted in its motion to substitute party that it "did not have standing currently or when the case was filed" and that the doctrine of misnomer was inapplicable because PMG was not a proper party to the suit, LT Ranch filed special exceptions to PMG's second amended petition and moved to strike the petition. LT Ranch asserted that, when taken as a whole, PMG's ongoing, repeated, and continuing assertion of its rights as named plaintiff—with no prior mention of PML—confirmed that PMG's naming itself as the original plaintiff was not a mistake or a misnomer. Finally, LT Ranch argued that it had pending counterclaims against PMG—wholly unrelated to any alleged lease issue between itself and PMG—and that applying the doctrine of misnomer would impermissibly permit PMG to remove itself from the suit and avoid live claims against it.

On March 25, 2025, the trial court held an oral hearing on (1) PMG's motion to substitute party and motion to compel the deposition of LT Ranch's designated representative and (2) LT Ranch's motion for traditional summary judgment on all of PMG's remaining claims. No record of the hearing was made. Following the hearing, the trial court denied PMG's motion to substitute party and granted LT Ranch's

6

motion for traditional summary judgment, dismissing all of PMG's remaining claims against LT Ranch.[8]

On April 23, 2025, the trial court granted LT Ranch's motion to dissolve the temporary injunction. The following day, the trial court—having found that it had previously considered and ruled that PMG had admitted that it was not a proper party to bring the claims asserted and that in conjunction with that ruling, misnomer was not applicable—sustained LT Ranch's special exceptions and struck PMG's second amended petition.

LT Ranch filed a second amended counterclaim that contended PMG's admission "that it was not a party to the Purported Lease rendered LT Ranch's declaratory judgment action moot against PMG" and filed a motion for partial traditional summary judgment for attorney's fees and costs as the prevailing party under the TTLA and the Uniform Declaratory Judgment Act (UDJA).[9] LT Ranch contended that it should recover $30,251.60 under the TTLA[10] and $1,873.80 under

---

[8]The record does not contain a ruling on PMG's motion to compel the deposition of LT Ranch's designated representative.

[9]In support of its motion, LT Ranch attached several exhibits, including an attorney's fee affidavit (Exhibit 2) and a detailed chart describing the attorney's activity and allocating her respective time working on the case.

[10]LT Ranch's requested amount was for fees it had accrued since October 10, 2025, "related to PMG's TTLA claim(s)."

the UDJA. LT Ranch set its summary-judgment motion for a hearing by submission on May 16, 2025.

PMG responded to LT Ranch's summary-judgment motion and made several arguments. First, it claimed that awarding LT Ranch fees, "when its wrongful conduct forced the filing of this lawsuit, would be inequitable and unjust." Second, PMG maintained that LT Ranch could not recover fees under the TTLA because that claim had not been pleaded until February 11, 2025. Third, it argued that "issues of fact with respect to the reasonableness and necessity of fees LT Ranch purportedly incurred preclude summary judgment." In support of its fact-issue argument, PMG attached a counter-affidavit from its attorney contesting the reasonableness and necessity of LT Ranch's attorney's fees.

On May 15, 2025—the day before the summary-judgment hearing—LT Ranch filed a reply to PMG's response. LT Ranch claimed that PMG's attorney's counter-affidavit was "a sham because [it] contain[ed] at least one false statement of fact and, without explanation, contradict[ed] affiant [PMG's attorney's] prior sworn opinions and testimony on identical items in affidavits he proffer[ed] to support his requests for fees in other lawsuits." In support of its claim, LT Ranch attached copies of PMG's attorney's fee affidavits in other cases. PMG filed an objection to LT Ranch's reply, arguing that the reply was not timely filed in accordance with Texas Rule of Civil Produce 166a. *See* Tex. R. Civ. P. 166a(e) ("[T]he movant must file [any] reply within 7 days after the response is filed.").

On May 27, 2025, the trial court granted LT Ranch's partial summary-judgment motion for attorney's fees and awarded LT Ranch attorney's fees in the amounts of $30,351.60 under the TTLA and $1,873.80 under the UDJA. LT Ranch then nonsuited its trespass counterclaim, the trial court signed a final judgment,[11] and PMG filed this appeal.

## III. DISCUSSION

### A. PMG'S MOTION TO SUBSTITUTE PARTY

In its first issue, PMG argues that the trial court erred by denying its motion to substitute party. We disagree.

### 1. Lack of a Reporter's Record

As an initial matter, LT Ranch argues that the lack of a reporter's record of the March 25, 2025 hearing raises a presumption that the trial court heard sufficient evidence to support its denial of PMG's motion to substitute party and that we should therefore summarily affirm. We disagree.

An appellant must present an appellate court with a sufficient record demonstrating error requiring reversal. *See Henning v. Henning*, 889 S.W.2d 611, 613 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Typically, when no reporter's record is filed, the reviewing court must presume that the missing evidence supports the trial court's ruling. *See Bryant v. United Shortline Inc. Assurance Servs., N.A.*,

---

[11]No findings of fact or conclusions of law were requested or filed.

9

972 S.W.2d 26, 31 (Tex. 1998); *Opoku-Pong v. Boahemaa*, No. 14-19-00070-CV, 2020 WL 3240742, at \*2 (Tex. App.—Houston [14th Dist.] June 16, 2020, no pet.). This presumption only arises, however, when the hearing at issue is evidentiary. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). Appellate courts presume that pretrial hearings are non-evidentiary and that the trial court only considered the evidence filed with the clerk. *Id.* For non-evidentiary pretrial hearings, a reporter's record generally is superfluous. *See Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910 (Tex. 2017). "If all the evidence is filed with the clerk and only arguments by counsel are presented in open court, the appeal should be decided on the clerk's record alone." *Michiana*, 168 S.W.3d at 782.

LT Ranch contends that the trial court's order was based on an evidentiary hearing, yet it does not point us to any "specific indication that exhibits or testimony was presented in open court *beyond* that filed with the clerk." *Id.* at 783; *Crawford*, 509 S.W.3d at 910. Instead, LT Ranch merely asserts because PMG failed to arrange for a reporter's record of the hearing on its motion to substitute party, it has failed to preserve its right to appeal the trial court's order denying its motion and that we should "presume any such hearing was conducted correctly and supported the trial court's order." But this assertion is too general to indicate that the trial court heard evidence at the hearing.

Instead, the order denying PMG's motion to substitute party reflects that the March 25, 2025 hearing was non-evidentiary. The order recites that the trial court

10

"considered the Motion, the evidence and pleadings on file, any responses and replies to the Motions, the [trial c]ourt's own records, and argument of counsel." Nothing in the record contradicts that recital or indicates that the trial court considered evidence at the hearing.

Accordingly, we conclude that there is no presumption, and we reach the merits of this issue by considering the evidence attached to the parties' written filings. *See Michiana*, 168 S.W.3d at 782.

## 2. PMG's Motion to Substitute Party

PMG contends that "[t]he purpose of PMG's Motion to Substitute was to correct a misnomer" and that the trial court erred by disallowing PMG's substitution with PML as the plaintiff. We disagree.

We review a trial court's grant or denial of a substitution of a party for an abuse of discretion. *Gray v. Estell*, No. 05-98-01785-CV, 2001 WL 279181, at *2 (Tex. App.—Dallas Mar. 22, 2001, no pet.) (not designated for publication) (reviewing a trial court's granting or denying of a substitution under an abuse of discretion); *see Crawford*, 509 S.W.3d at 910–11 (reviewing a trial court's rulings on issues concerning joinder of parties for an abuse of discretion); *Allison v. Ark. Gas Co.*, 624 S.W.2d 566, 568 (Tex. 1981) ("Such procedural matters as joinder and consolidation of parties and claims are within the discretion of the trial court. The court's rulings on these matters will not be disturbed on appeal except for abuse of discretion."); *Ohmart v. Highbarger*, 43 S.W.2d 975, 975–76 (Tex. Civ. App.—San Antonio 1931, writ ref'd) ("A trial judge

11

is vested with a wide discretion in permitting amendments to pleadings and the making of additional parties.").

A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But no abuse of discretion occurs when the trial court decides based on conflicting evidence, so long as some substantive and probative evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

PMG argues that its motion to substitute party was intended to merely correct a misnomer, but that argument is unsupported by the motion. First, PMG's motion was unaccompanied by any evidence supporting its claim that PML was the correct party in interest and proper plaintiff. In fact, no evidence whatsoever was attached to PMG's motion. By contrast, LT Ranch's response to the motion was accompanied by

12

eleven exhibits, including the lease and records from the Texas Secretary of State listing PML's legal name and management.

Second, PMG's motion made no mention whatsoever of misnomer. Instead, PMG's substitution argument relied upon Texas Rules of Civil Procedure 28, 37, and 41, but none of those rules permitted PMG to substitute itself with PML.

Texas Rule of Civil Procedure 28 provides that a

> partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on a motion by any party or on the court's own motion the true name may be substituted.

Tex. R. Civ. P. 28. PMG did not claim to be a "partnership, unincorporated association, private corporation, or individual doing business" as PML. *Id.* And, even if PMG is an assumed name for PML, PMG failed to prove as much by attaching any evidence in support of its motion. On the contrary, LT Ranch's evidence reveals that PMG and PML are entirely separate, distinct entities.

Texas Rule of Civil Procedure 37 provides that

> [b]efore a case is called for trial, additional parties necessary or proper parties to the suit, may be brought in, either by the plaintiff or the defendant, upon such terms as the court may prescribe; but not at a time nor in a manner to unreasonably delay the trial of the case.

Tex. R. Civ. P. 37.

Texas Rule of Civil Procedure 41 provides that

> [p]arties may be dropped or added, or suits filed separately may be consolidated, or actions which have been improperly joined may be

severed and each ground of recovery improperly joined may be docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action, before the time of submission to the jury or to the court if trial is without a jury, on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Tex. R. Civ. P. 41.

Although it cited Rules 37 and 41, PMG's motion did not seek joinder. Instead, it sought to substitute itself with PML—not join PML to the suit. Texas Rules of Civil Procedure 37 and 41 do not provide for such a substitution. *See* Tex. R. Civ. P. 37, 41.

But, even if PMG had asserted misnomer in its motion, the assertion would have been unmeritorious. "A misnomer occurs when a party misnames itself or another party, but the correct parties are involved." *See In re Greater Hous. Orthopedics Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2012) (orig. proceeding) (per curiam); *Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex. 1999) (noting that "[m]isnomer arises when a plaintiff sues the correct entity but misnames it"); *Chen v. Breckenridge Est. Homeowners Ass'n, Inc.*, 227 S.W.3d 419, 421 (Tex. App.—Dallas 2007, no pet.) (holding that misnomer occurred when enforcement order referred to actual plaintiff "Breckenridge Estates Homeowners Association, Inc." as "Breckenridge Park Estates No. 1 and No. 2 Homeowner's Association, a Texas non-profit corporation, also identified in the pleadings and known as Breckenridge Estates Homeowners Association, Inc."); *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347 (Tex. App.—

14

Texarkana 1998, no pet.) (determining that misnomer occurred when actual plaintiff, SMS II, instead named another entity, SMS I, in its original petition).

Here, the correct plaintiff was not involved. PMG admitted in its motion to substitute party that it was not a correct party in interest or the proper plaintiff.[12] The trial court found that it had "previously considered and ruled that [PMG] ha[d] admitted it is not a proper party to bring the claims asserted and that[,] in conjunction with that ruling, misnomer is not applicable in this case." Because PMG is not a correct party to the suit, misnomer is not applicable. *Chilkewitz*, 22 S.W.3d at 828.

Moreover, even if misnomer had been asserted in PMG's motion and if it had been applicable in this case, there is another ground that supports the trial court's denial of the motion to substitute party: LT Ranch's counterclaims against PMG. PMG argues that the substitution would "not alter the claims or facts of the case," yet LT Ranch had pending counterclaims against PMG for trespass and declaratory judgment. Those counterclaims were against PMG—not PML. Consequently, if the trial court had granted PMG's motion to substitute party, then it would have altered

---

[12]"Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *House. First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact. *See Levinson v. Manhattan Constr. Co.*, 449 S.W.2d 458, 467 (Tex. 1969). Here, PMG's admission that it was not the correct party in interest and proper plaintiff was clear and unequivocal when it stated that it had determined that it "was improperly named as the plaintiff" and that the "correct party in interest and proper Plaintiff is [PML]."

15

the claims by removing PMG from the suit and effectively dismissing LT Ranch's counterclaims against PMG.

Irrespective of that reality, PMG asserts that LT Ranch was fully aware of the Lease and circumstances surrounding PMG's claims and that correcting the misnomer would not have surprised or disadvantaged LT Ranch in defending against this lawsuit. Even assuming PMG's assertions are true, they do not remedy the fact that (1) PMG was not the correct party in interest and proper plaintiff, (2) PMG's motion provided no evidence in support of PML's substitution, and (3) LT Ranch had pending counterclaims against PMG. We cannot conclude that the trial court acted arbitrarily or unreasonably because there is some substantive and probative evidence to support the trial court's denial of PMG's motion to substitute party. *See Low*, 221 S.W.3d at 614; *Garcia*, 363 S.W.3d at 578. For the same reasons, we cannot conclude that the trial court acted arbitrarily or unreasonably by sustaining LT Ranch's special exceptions and striking PMG's second amended petition that attempted to remove PMG as a party and replace it with PML. Accordingly, we hold that the trial court did not abuse its discretion by denying PMG's motion to substitute party and by striking PMG's second amended petition.

We overrule PMG's first issue.

16

## B. PMG'S MOTION TO COMPEL

In its second issue, PMG maintains that the trial court erred by denying its motion to compel the deposition of LT Ranch's designated representative. This issue is unpreserved.

### 1. Standard of Review and Applicable Law

If a party is not satisfied with an opposing party's discovery objections or responses to discovery inquiries, that party may move the trial court to compel discovery. *See* Tex. R. Civ. P. 215.1.

To preserve a complaint on a discovery dispute for appellate review, a party must obtain a ruling from the trial court on the discovery matter. Tex. R. App. P. 33.1(a)(2)(A); *see Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex. 2002); *see also Goodchild v. Bombardier-Rotax GMBH Motorenfabrik*, 979 S.W.2d 1, 6–7 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (op. on reh'g) ("The statement of facts from the hearing indicates appellants raised their complaints [regarding a motion to compel interrogatories and a response to a motion for production] at the hearing, but they did not obtain a ruling from the trial court on the motion and they did not object to the trial court's failure to make such a ruling."). If the trial court refuses to rule, the party preserves error by objecting to that refusal. Tex. R. App. P. 33.1(a)(2)(B). But if the trial court does not rule and the party does not object to the refusal to rule, then error is not preserved. *Id.*

17

## 2. No Ruling on PMG's Motion to Compel

PMG argues that the trial court erred by denying PMG's motion to compel the deposition of LT Ranch's designated representative, but the record contains no such ruling by the trial court.

Indeed, PMG moved to compel the deposition of LT Ranch's designated representative and requested a hearing on the motion, but the record does not contain the trial court's ruling on the motion. First, the clerk's record does not contain an order denying the motion, and we have found nothing in the record indicating that the trial court ever—expressly or implicitly—ruled on the motion. *See* Tex. R. App. P. 33.1(a)(2)(A); *Mead v. RLMC, Inc.,* 225 S.W.3d 710, 713–14 (Tex. App.—Fort Worth 2007, pet. denied) (holding that the fact that trial court granted party's motion for summary judgment did not allow inference that trial court sustained that party's objections). Second, because there is no reporter's record of the hearing, we have no way of knowing whether the trial court denied the motion to compel or whether the trial court refused to rule on the motion and PMG objected to the trial court's refusal to rule. *See* Tex. R. App. P. 33.1(a)(2)(B). Accordingly, we hold that PMG has failed to preserve this issue for our review. *See* Tex. R. App. P. 33.1(a)(2); *Fox v. Wardy,* 224 S.W.3d 300, 303 (Tex. App.—El Paso 2005, pet. denied) (holding issue not preserved where appellant failed to obtain ruling on his motion); *Goodchild,* 979 S.W.2d at 6–7 (holding that appellant failed to preserve error on motion to

18

compel discovery where trial court never ruled on motion and appellant failed to object to refusal to rule).

We overrule PMG's second issue.

### C. LT RANCH'S AWARD OF ATTORNEY'S FEES

In its third issue, PMG maintains that the trial court erred by granting LT Ranch's partial motion for summary judgment and awarding LT Ranch attorney's fees and costs under the TTLA and the UDJA. We agree.

### 1. Fees Under the TTLA

### a. Standard of Review and Applicable Law

An award of attorney's fees and court costs to each prevailing person is mandatory under the TTLA. Tex. Civ. Prac. & Rem. Code § 134.005(b). This includes a defendant who successfully defends against a claim under the act. *See Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 147–48 (Tex. 2019). But even a mandatory fee award must be supported by the pleadings and the record. *Garcia v. Gomez*, 319 S.W.3d 638, 644 (Tex. 2010).

The availability of attorney's fees under a particular statute is a question of law for the trial court. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). We therefore review the issue of whether a party was entitled to an award of attorney's fees under the TTLA de novo. *Brinson Benefits, Inc. v. Hooper*, 501 S.W.3d 637, 645 (Tex. App.—Dallas 2016, no pet.); *see El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999).

### b. The Trial Court's Award Under the TTLA

The trial court awarded attorney's fees to LT Ranch under the TTLA in the amount of $30,351.60. PMG contends that the trial court erred by awarding these fees under the TTLA because the fees were allegedly incurred prior to PMG's bringing a claim under the TTLA. We agree.

PMG filed its original petition on September 27, 2024, which included claims for breach of contract, conversion and theft, trespass, declaratory judgment, and attorney's fees. The September 27 petition did not, however, include a TTLA claim. PMG later amended its petition and pleaded a TTLA claim on February 11, 2025, and the trial court granted summary judgment on that claim in favor of LT Ranch on March 27, 2025. LT Ranch then moved for partial summary judgment for attorney's fees and costs as the prevailing defendant under the TTLA and attached Exhibit C, among other exhibits, in support of its motion. Exhibit C reflected that a significant portion of LT Ranch's requested fees were "100%" allocated or attributable to PMG's TTLA claim and that it had incurred fees from defending against the TTLA claim from October 10, 2024, through February 11, 2025. But as noted, the record reflects that PMG's TTLA claim had not yet been pleaded.

LT Ranch contends that "[p]rior to adding a TTLA claim, PMG asserted, in its original petition, claims for conversion and common-law theft" and that "[u]nlawful appropriation (theft) and misappropriation (conversion) are each an element of claims

20

under the TTLA." With this in mind, LT Ranch argues that it "was entitled to all fees that advanced LT Ranch's defense against PMG's TTLA claim" because

> [f]rom the inception of the lawsuit, LT Ranch was required to defend itself from an element of PMG's TTLA claim. And, the defense of that element and discovery related thereto was then subsumed into the defense of that element in PMG's TTLA claim. Simply put, the trial court awarded mandatory TTLA fees to LT Ranch based on its defense of PMG's TTLA claim, in whole or in part, regardless of when that defense occurred.

But LT Ranch has cited no authority—nor have we found any—that permits a trial court to award attorney's fees under the TTLA for work performed before a TTLA claim has been pleaded, even if that work includes defending against an element of a TTLA claim.[13] *C.f. Crownover v. Crownover*, No. 03-02-00193-CV, 2002 WL 31769037, at *3 (Tex. App.—Austin, Dec. 12, 2002, no pet.) (holding that the mere inclusion of the word "theft" in a petition, without some kind of statutory reference or allusion, did not raise a cause of action under the TTLA that would entitle prevailing party to attorney's fees). Accordingly, we hold that the trial court erred by granting summary judgment on LT Ranch's TTLA attorney's fees claim.

We sustain the first part of PMG's third issue.

---

[13]LT Ranch points out that "the plain language of the TTLA contains few limitations" and argues that "[b]y its broad, plain language the mandatory TTLA fee provision includes fees reasonable and necessary to combat all elements of a TTLA claim." We decline the invitation to adopt such a broad interpretation of the TTLA. Rather, the plain language of the statute provides that the fees must be reasonable and necessary *as to a TTLA claim*—it does not, however, so explicitly extend to defending against an element of an unleaded TTLA claim.

## 2. Fees Under the UDJA

PMG next attacks the trial court's award of attorney's fees under the UDJA, contending that (1) the "fees were not reasonable, necessary, equitable, or just because LT Ranch forced the filing of this lawsuit" and (2) "issues of fact regarding the reasonableness and necessity of LT Ranch's attorney's fees precluded summary judgment."

With respect to its second contention, PMG argues that it raised a fact issue by timely filing a counter-affidavit contesting the reasonableness and necessity of LT Ranch's attorney's fees. But the day before the summary-judgment hearing, LT Ranch filed a reply, alleging that PMG's attorney's counter-affidavit did not raise a fact issue because it was sham affidavit. PMG objected to LT Ranch's untimely reply, but the trial court implicitly overruled the objection when it awarded attorney's fees to LT Ranch.

### a. Standard of Review and Applicable Law

We review a trial court's grant or denial of summary judgment de novo. *Sw. Bell Tele., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015). To prevail on a traditional motion for summary judgment, the moving party must prove that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(1); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).

In a declaratory-judgment action, the trial "court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009; *State & Cnty. Mut. Fire Ins. Co. ex rel. So. United Gen. Agency of Tex. v. Walker*, 228 S.W.3d 404, 407 (Tex. App.—Fort Worth 2007, no pet.). The reasonableness of attorney's fees is a fact question. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "[W]hile the reasonableness and necessity of attorney's fees is generally a question of fact, '[a]n attorney's affidavit can sufficiently establish the reasonableness of attorney's fees for purposes of summary judgment.'" *Gaughan v. Nat'l Cutting Horse Ass'n*, 351 S.W.3d 408, 423 (Tex. App.—Fort Worth 2011, pet. denied) (quoting *Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 373 (Tex. App.—San Antonio 1999, pet. denied)). To constitute competent summary-judgment evidence, an affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated. Tex. R. Civ. P. 166a(j)(4). If the movant presents expert testimony in support of attorney's fees, the burden shifts to the non-movant to raise a fact issue. *Jordan v. Centerpoint Energy Hous. Elec., LLC*, No. 14-18-00663-CV, 2019 WL 5565978, at *10 (Tex. App.—Houston [14th Dist.] Oct. 29, 2019, pet. denied). Absent controverting evidence, the movant's affidavit will support summary judgment. *Id.*

"If an attorney's affidavit regarding fees is properly controverted by an opposing attorney, a fact issue is raised on reasonableness and summary judgment is

23

precluded." *Sun Tec Comput., Inc. v. Recovar Grp., LLC*, No. 05-14-00257-CV, 2015 WL 5099191, at *5 (Tex. App.—Dallas Aug. 31, 2015, no pet.); *see also Jordan*, 2019 WL 5565978, at *10.

### b. The Summary-Judgment Evidence

LT Ranch attached, among other things, an affidavit from its attorney attesting to the reasonableness and necessity of its requested attorney's fees, and PMG attached a counter-affidavit from its attorney contesting the reasonableness and necessity of LT Ranch's requested attorney's fees.[14] Neither party challenged the other's personal knowledge or competence to testify as to the matters contained within their respective affidavits. *See* Tex. R. Civ. P. 166a(j)(4). Instead, LT Ranch asserted in its reply—filed one day before the summary-judgment hearing—that PMG's attorney's counter-affidavit did not raise a fact issue because it was a sham affidavit. Thus, we first address PMG's complaint that the trial court abused its discretion by considering LT Ranch's untimely-filed reply and then LT Ranch's assertion that PMG's counter-affidavit failed to raise a fact issue because it is a sham affidavit.

---

[14]PMG's counter affidavit did more than assert that the fees were not reasonable or necessary. It stated the attorney's qualifications and applied relevant factors to conclude the fees were unreasonable, identifying which work was allegedly unreasonable or unnecessary.

### c. LT Ranch's Reply

### (1.) Preservation of PMG's Complaint

As an initial matter, we address LT Ranch's argument that PMG failed to preserve its untimeliness compliant. LT Ranch maintains that the complaint is unpreserved because—although PMG objected to LT Ranch's untimely reply—PMG failed to obtain a ruling from the trial court on the objection.

If a party does not obtain a ruling on an objection to the form of summary-judgment evidence, the objection is not preserved. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164–65 (Tex. 2018). Without a ruling, the complained-of evidence remains part of the summary-judgment record and should be considered by an appellate court in reviewing the summary judgment. *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) (citing *Seim*, 551 S.W.3d at 166). Unless the record shows a clearly implied ruling, a ruling on evidentiary objections is required to preserve error. *See Seim*, 551 S.W.3d at 165–66.

A trial court's ruling on a summary-judgment motion is generally not an implicit ruling on objections to the summary-judgment evidence. *See id.* Here, however, the trial court's recital that it "considered the Motion, the summary judgment evidence, the pleadings on file, any responses and *replies to the Motion*, and the [trial c]ourt's own records"—without any limitation—is an "affirmative indication" that the trial court considered LT Ranch's untimely reply and attached exhibits, implicitly overruling PMG's objections to LT Ranch's reply. [Emphasis

25

added] *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 261 (Tex. 2020). We therefore conclude that this complaint was preserved for our review.

### (2.) LT Ranch's Untimely Reply

We next address PMG's argument the trial court erred by considering LT Ranch's untimely reply and exhibits.

Rule 166a(e)(1) provides that "[e]xcept on leave of court or agreement of the parties, the movant must file the reply within 7 days after the response is filed." Tex. R. Civ. P. 166a(e)(1). As the rule makes clear, the trial court has discretion to accept an untimely-filed reply. *See id.*; *Torres v. Lee*, No. 05-18-00631-CV, 2020 WL 38832, at *6 (Tex. App.—Dallas Jan. 3, 2020, no pet.). As noted, a trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low*, 221 S.W.3d at 614.

Here, LT Ranch's reply was filed one day before the hearing, making it untimely. *See* Tex. R. Civ. P. 166a(e)(1). Yet, the trial court's order granting summary judgment reflects that the trial court considered LT Ranch's reply, such that we may presume the trial court considered, and thus gave leave to file, the reply and the exhibits attached to it. *See B.C.*, 598 S.W.3d at 261 n.27; *Stavron v. SureTec Ins. Co.*, No. 02-19-00125-CV, 2019 WL 6768125, at *6 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.) ("The summary judgment order makes clear that the trial court considered, and thus gave leave to file, the supplemental evidence attached to SureTec's reply. The order recites, 'After *considering* the Motion, the responses filed by

26

Serafim and Ione Stavron, and the replies thereto filed by SureTec Insurance Company, the Court finds that SureTec's Motion should be GRANTED in its entirety.'").

We construe PMG's argument to be that the trial court abused its discretion by accepting LT Ranch's untimely reply and considering the attached exhibits, but PMG provides no authority or argument as to how the trial court acted without reference to any guiding rules or principles. *See Low*, 221 S.W.3d at 614. Accordingly, we cannot conclude that the trial court abused its discretion by considering LT Ranch's reply.

### (3.) LT Ranch's Sham-Affidavit Argument

Lastly, we turn to LT Ranch's contention that PMG's counter-affidavit failed to raise a fact issue because it was a sham affidavit. LT Ranch rooted its sham allegation in the fact that PMG's attorney's affidavit contained "opinions that contradict[ed] [] his prior sworn affidavits as fee expert in support of fees that he sought on behalf of himself, his firm, and his clients in other cases." In support of this allegation, LT Ranch attached PMG's attorney's fee affidavits from three unrelated cases.[15]

A sham affidavit is one in which the affiant attempts to create a fact issue with a statement that is contrary to the affiant's prior sworn statement and made for the purpose of preventing a summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85

---

[15]LT Ranch alleged that PMG's attorney had argued in the present case "that a party cannot receive fees for unsuccessful endeavors or if an order has not yet been entered"—contrary to arguments made by the same attorney in affidavits filed for clients in other cases.

(Tex. 2018). The rule provides that "a trial court may conclude that a party does not raise a genuine fact issue by submitting sworn testimony that materially conflicts with the same witness's prior sworn testimony, unless there is a sufficient explanation for the conflict." *Id.* at 87. The rule may be applied when "(1) the affidavit is executed after the [affiant's prior sworn statement] and (2) there is a clear contradiction on (3) a material point (4) without explanation." *Id.* at 88.

Without a prior sworn statement from the same affiant, the sham-affidavit rule cannot be applied. *See Brooks v. Wycough*, No. 12-25-00138-CV, 2026 WL 1096917, at *3 (Tex. App.—Tyler Apr. 22, 2026, pet. denied) (stating that "if there is no prior sworn statement to compare, then an affidavit cannot be labeled a sham affidavit"); *Reynolds Energy Transp., LLC v. Plains Mktg., L.P.*, 706 S.W.3d 845, 890 (Tex. App.—San Antonio 2024, no pet.) (refusing to label an expert's affidavit as a sham precisely because "there is no evidence that [the expert] contradicted any prior sworn statement").

Relevant here, there is no evidence in the record that PMG's attorney, acting as the attorney's fee counter-affiant, gave prior sworn testimony *in the pending case.* Because he had not been deposed, had not submitted a prior affidavit in this case, and had not given any sworn statement in this proceeding, the foundational predicate for the sham-affidavit rule—a prior sworn statement by the same affiant—is lacking. There is no prior sworn statement by PMG's attorney in this case to compare. *See Reynolds Energy Transp.*, 706 S.W.3d at 890.

28

LT Ranch's secondary argument—that the counter-affidavit is a sham affidavit because PMG's attorney took opposing positions in fee affidavits filed in separate, unrelated cases—is unsupported by authority. In our review of the applicability of the sham-affidavit rule, Texas courts have compared sworn statements from the same affiant in the same case or proceeding. LT Ranch has not pointed us to any Texas court that has taken the additional step of reaching into other proceedings to compare an affiant's sworn statements for sham affidavit purposes.

We conclude that the sham-affidavit rule, under the facts of this case, is inapplicable because (1) PMG's attorney had no prior sworn testimony of any kind in this case and (2) LT Ranch's theory that an attorney's fee affidavits submitted in other, unrelated cases constitute the predicate "prior sworn statement" under the rule is not supported by precedent.[16]

---

[16]The sham-affidavit rule targets an affiant who swears to directly contradictory facts about the same subject matter. An attorney opining in "Case A" that his own billable hours at his own rate were reasonable for the work he performed in "Case A" is not making a sworn statement about the reasonableness of a different attorney's billing rates, hours, and tasks in unrelated "Case B." The subject matters of the two affidavits are distinct. *Lujan* distinguished between minor variations in testimony within the same case—which are "grounds for impeachment"—versus clear contradictions on material points—which may trigger the sham-affidavit rule. *See Lujan*, 555 S.W.3d at 88. While *Lujan* distinguished between minor variations and material contradictions in testimony within the same case, it did not address cross-case comparisons. *See id.* An expert testifying about the reasonableness of his own fees in one litigation and opining about another attorney's fees in separate litigation is not even in the category of testimony variations within a single case—the two opinions address different scenarios in entirely different proceedings. At most, affidavits from other cases may be usable to attack the expert's credibility on cross-examination at a trial on the merits—a matter entirely distinct from the summary-

Having concluded that LT Ranch's sham-affidavit argument is inapplicable to this case, we are left with LT Ranch's attorney's affidavit attesting to the reasonableness and necessity of its attorney's fees and PMG's attorney's counter-affidavit controverting the reasonableness and necessity of the fees. Consequently, PMG's attorney's counter-affidavit raised a fact issue with respect to the reasonableness and necessity of LT Ranch's attorney fees and precluded summary judgment. *Wich v. Fleming*, 652 S.W.2d 353, 358 (Tex. 1983) (op. on reh'g) ("[T]he determination of the disputed fact issue of attorney's fees [is] improper in a summary[-]judgment proceeding."); *see Affordable Motor Co. v. LNA, LLC*, 351 S.W.3d 515, 522–23 (Tex. App.—Dallas 2011, pet. denied) (holding that trial court erred in awarding attorney's fees in summary-judgment proceeding when attorney's fees were controverted by an affidavit from opposing counsel opining that fees claimed were excessive). Accordingly, because an issue of fact existed with respect to the

judgment analysis. Moreover, the rule's policy rationale undermines LT Ranch's cross-case theory. The doctrine exists, as *Lujan* emphasized, because a party who has already committed to a version of facts under oath should not be permitted to manufacture a contradictory sworn statement to defeat summary judgment. *See id.* at 87. That concern is absent when a fee expert opines on a different set of billing records in a different case. Attorney's fee determinations often turn on case-specific factors including the nature of the dispute, the time and labor required, the difficulty of the questions, the skill required, the fee customarily charged in the locality, the amount involved, the results obtained, and the experience and ability of counsel. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494 (Tex. 2019). Because these factors vary from case to case, a difference in an attorney's fee opinions across cases may reflect case-specific analysis rather than fraudulent self-contradiction.

reasonableness and necessity of LT Ranch's attorney fees, we hold that the trial court erred by granting summary judgment on LT Ranch's UDJA attorney's fees claim.

We sustain the second part of PMG's third issue.

## V.  CONCLUSION

Having sustained PMG's third issue, we reverse the portion of the trial court's judgment awarding attorney's fees under the TTLA and the UDJA and remand that issue to the trial court for further proceedings.  *See* Tex. R. App. P. 43.2(d).  Having overruled PMG's other two issues, we affirm the remainder of trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Brian Walker

Brian Walker
Justice

Delivered:  June 25, 2026

31